MOLLIE RATHBUN, APPELLEE, V. GLOBE INDEMNITY COM-
PANY, APPELLANT.

FILED OCTOBER 14, 1921. No. 21692.

1. **Insurance: ACCIDENT POLICY: CONSTRUCTION.** The several provisions contained in an accident insurance policy will be given a practical and rational construction, one consistent with reason and common fairness, and with a view to avoiding, rather than enforcing, a forfeiture, if the terms of the instrument will fairly and justly permit it.

2. ———: ———: ———. Where the language of a special provision in an accident insurance policy is susceptible of but one construction, and that construction inevitably leads to an unreasonable or absurd result and substantially defeats the object and purpose of the entire contract, such provision will be rejected as inoperative, and, ignoring the same, the court will look to the whole instrument and gather therefrom the manifest intention and purpose of the parties and adjudicate accordingly.

3. ———: ———: TOTAL DISABILITY. Where one insured under an accident policy received an injury to his hip through accident, from which he suffered severe pain and lameness for the first three days thereafter, when a two weeks' respite from any conscious ill effects from the injury intervened, during which time the insured attended to the most, if not all, of his professional duties as a surgeon, but at the end of which time pain and lameness reoccurred and continued with increasing severity for a period of about 2½ months, during which time the insured performed some of his professional labors, but under more or less stress of pain and discomfort, being compelled to have his assistants do many things in the course of operations upon patients that always before he had been accustomed to do himself, and at the end of which 2½ months the insured retired entirely from any attempt in the performance of any and every duty because of pain and suffering from the injury, and continued to suffer with increased severity until three months later, when he died of sarcoma, a malignant disease, involving the hip joint, which the evidence conclusively shows was the direct and immediate result of the accident sustained six months previous, the injured *held* "to be totally and continuously unable to transact all business duties from date of accident," as this language, properly construed, is employed in the policy.

4. ———: ATTORNEY'S FEES. The sum allowed plaintiff as attorney's

fees by the lower court considered, and same reduced to an amount equal to 10 per cent. of the judgment recovered, exclusive of costs, and without interest.

APPEAL from the district court for Dodge county: FREDERICK W. BUTTON, JUDGE. *Affirmed as modified.*

*Montgomery, Hall & Young,* for appellant.

*Courtright, Sidner, Lee & Jones, contra.*

Heard before MORRISSEY, C.J., ROSE and FLANSBURG, JJ., DICKSON and TROUP, District Judges.

TROUP, District Judge.

This is a suit by the beneficiary upon an accident insurance policy indemnifying the insured against loss from disability resulting from an accident, including loss of life, hospital and surgical expenses. The insured sustained an accident, and, it is alleged by the plaintiff, died as a direct result thereof.

The following brief history of the accident and events following may be considered established by the evidence: At about noon on a day between the 1st and the 5th of March, 1919 (no witness being able to give the exact date), Doctor Rathbun, the deceased, then a practicing physician and surgeon in the city of Fremont, Nebraska, being alone in his automobile, drove up in front of the Fremont Hospital. Upon alighting from the footboard of his car, either from a misstep or by slipping upon the ice on the pavement, he was caused to fall, striking his right hip either upon the pavement in the street or the curb close by. For a moment he lay where he had fallen, then arose and, slightly limping, entered the hospital. For the next two or three days he suffered severe pain in his right hip; the pain then subsided, and for a period of two weeks it was such that he gave it little or no attention. At the end of two weeks the pain and lameness returned, causing much inconvenience when moving from a sitting to a standing posture. This was followed by pains in the rectum on the right side of the pelvis. From

that time on he continued to suffer increasing pain and lameness, submitting himself to a rectal examination, both by Fremont and Omaha surgeons, but without a discovery of the trouble, and, growing worse, he retired to his bed for two weeks, at which time another examination was made and revealed a tender swelling or mass in the region of the hip, which gave the patient much pain. In company with another physician he went to Mayo Brothers and submitted himself to examination and treatment, but returned unimproved, and soon thereafter became decidedly worse. Upon another examination by local surgeons the tender mass before mentioned had increased four or five times in size and was extremely tender. The patient was then taken to Doctors Oxnard and Percy, of Chicago, and was again operated upon, this time by an entrance into the abdominal cavity and down deep into the hip, where was readily located this tender mass, pronounced malignant in nature; removing this and properly preparing the parts, radium was applied by a radium specialist. At the end of two weeks the patient returned to Omaha, where he underwent further X-ray treatment, and after spending a week at his home in Fremont he returned to Omaha and the Clarkson Hospital, where he lingered until his death, September 5, 1919. A post-mortem examination made by Doctor Johnson, of the University of Nebraska, and witnessed by some of the leading surgeons of Omaha, revealed malignant growths along the sinus, a complete disintegration and destruction of the bony floor or bottom of the articular cavity of the head and neck of the hip bone, and other like conditions of malignant disease, which all the physicians and surgeons present pronounced sarcoma; the same being the direct result of the injury to his hip received by his fall in March, 1919.

These facts, among others, are in substance set forth in plaintiff's petition, wherein it is further alleged that the deceased was totally and continuously unable to transact all business duties of his profession from the date of the

accident until his death, although for a time he undertook to do, and occasionally did, some surgical work until the month of June, 1919; that plaintiff made proper proofs of death of the insured and the cause thereof, and demanded payment of all disability claimed by the plaintiff, amounting to $8,242.90, composed of the following items alleged to be due and payable under the various provisions of the policy: Hospital expense, $125; disability from March 1 to September 5 at $25 a week, $617.90; and for loss of life, $7,500; totaling $8,242.90, together with a reasonable attorney's fee.

The defendant, in its answer, admits the issuance of the policy to deceased, notice of the death of the insured occurring on September 5, 1919, from sarcoma, but denies all other allegations in plaintiff's petition and any and all liability under the policy.

By agreement of parties the case was tried to the court without a jury. The only testimony at the trial was that adduced on behalf of the plaintiff. The defendant cross-examined plaintiff's witnesses, but otherwise offered no evidence. Upon submission of the case the court found for the plaintiff for the full amount prayed for, with interest and costs, together with an attorney's fee, with interest thereon, and rendered judgment accordingly. The defendant appeals.

Several errors are relied upon by the defendant for either the reversal or modification of the judgment of the court below, and, first, because it is established by the evidence that the insured died of sarcoma, a disease, which was the direct result of the bodily injury sustained by the fall of the deceased in March, 1919, and that under special provision A of the policy no recovery for death or disability can be had in such case. Special provision A, in so far as it applies to the instant case, is as follows:

"This policy does not cover * * * loss resulting from bodily injury caused or contributed to, directly or indirectly, by disease, or *vice versa*."

The *"vice versa"* provision, as interpreted by the defendant company, and we presume correctly, is as follows:

"This policy does not cover   *   *   *   loss resulting from disease caused or contributed to, directly or indirectly, by bodily injury."

It is urgently insisted by the defendant that the evidence establishes all that is claimed for it, as above stated, that the language of the above quoted provisions of the policy is perfectly plain and unambiguous, and must be held to mean exactly what they say, and that, if so construed, plaintiff cannot recover for the disability or death of the insured. We must agree with the defendant that the evidence conclusively shows that the insured died of sarcoma, a disease, and that the disease from which he died was the direct result of the bodily injury sustained from the accident occurring to him in March; but we are not able to agree that the provisions of the policy above quoted forbid a recovery for the disability and death of the insured in this instance. We will, however, cordially agree with counsel for defendant in their argument that, in approaching the construction of an insurance policy, the court should have in mind the same general principles which obtain in the construction of any other contract, in so far as that the language employed should be given its plain, natural and ordinary meaning, and not be twisted into an unnatural or exceptional meaning merely to avoid a forfeiture, and that, when such construction is demanded by the plain and unequivocal terms of the instrument, the courts, of course, should have the moral courage to so construe it, regardless of the consequences. But this rule, of course, presupposes the nonexistence of two very important factors in the equation: First, that such construction will not end in an unreasonable or absurd result; and, second, that it will not defeat the manifest intention of the parties and the very object and purpose they had in entering into the contract at all. If the construction indicated will inevitably lead to either one or both of the results above stated, then such construc-

tion will be avoided, and, if the provision to be construed will admit of no other construction than the one leading to and ending in such result, the provision itself will be rejected as inoperative, and, ignoring the special provision, the court will look to the whole instrument, and, if possible, in justice to all parties concerned, gather therefrom the real and evident intention and purpose of the parties in respect to the particular question involved, and thus enforce or decline to enforce the contract accordingly. This much would seem to result from the very necessities of the situation. See on this subject 13 C. J. 521, secs. 482-486, and cases cited, *L'Engle v. Scottish Union & Nat. Fire Ins. Co.*, 48 Fla. 82, *Merrill v. Bell*, 14 Miss. 730, and *Stockton v. Turner*, 7 J. J. Marsh. (Ky.) *192.

Let us consider the effect of this *"vice versa"* provision in the light of the evidence in the case before us. One of the medical witnesses testifying for plaintiff defined the term "disease" as "any abnormality of the body resulting in a disturbance of the function or functions of the particular part affected; any general disturbance of the general functions of the body; a cut finger would be a disease." While it seems to the writer that the definition thus given is somewhat extreme and almost too comprehensive in its scope, yet the defendant has not seen fit to controvert it, nor are we prepared now to say that it is not sustained, in a substantial measure, by the standard medical authorities and leading lexicographers, as well as by decisions of some of the courts. See *Mutual Life Ins. Co. v. Simpson*, 88 Tex. 333.

Assuming, then, that the definition as above given is acceptable to the defendant and applicable to the term in question, as used in its policy, then, except accidents which result in instant, or almost instant, death, we can scarcely conceive of a case arising where the insured sustained a bodily injury by accident in which the insurer would not be absolutely exempt from liability for disability or death by virtue of the so-called *"vice versa"*

clause of the policy above quoted, under the interpretation insisted upon by the defendant company. We think it is fair to say that the number of persons insured who sustain an accident resulting in instant, or almost instant, death, as compared with the number insured who sustain bodily injury by accident resulting in disease, in one form or another, more or less prolonged, and yet directly traceable to the accident and in consequence of which disability, and perhaps death, follows, is certainly not greater than a ratio of 1 to 10; so that for every 1, 10 or 100 who would be entitled to recover under defendant's policy, there would be 9, 90 and 900 who could not recover a dollar for either disability or death because of this special provision referred to.

It seems to us that a theory which inevitably leads to such damaging results to the insured as would this is so unreasonable, absurd and destructive of the very object and purpose of the contract, as well as the manifest intention, or at least the supposed manifest intention and understanding of the parties who entered into it, that such a construction cannot be allowed; and, if the language of the provision is susceptible of no other construction, then that the provision itself cannot stand. We are of the opinion that in this instance there is no alternative, and that the clause in the defendant's policy known as the *"vice versa"* clause is inoperative and of no effect. But, taking another view of it, we think it must be conceded that all the authorities hold that a loss resulting from disease which is the direct and immediate result of a bodily injury sustained through accident is precisely the same as a loss resulting from the bodily injury itself. So, then, this provision will be precisely the same as though it read: "This policy does not cover * * * loss resulting from bodily injury caused or contributed to, directly or indirectly, by bodily injury"—which of course is a palpable absurdity.

If this disposition of the provision in question is the inevitable result of a just consideration of the same, the

defendant company has less reason to complain from the fact that it did not express in words in its policy the interpretation it expected to place upon the words *"vice versa."* This much at least the company should have done in fairness to the assured, so that he might at least have had the opportunity to read its interpretation as expressed in exact words, and thus act with knowledge in that regard. This the company did not do, but at best left it to conjecture, so far as the assured is concerned, as to what interpretation should be given to this phrase. So that, even in this view, the insured would be justified in believing that no interpretation would be given this phrase that would, except by a rare chance, wholly defeat the sole purpose and object of the contract.

But, as before stated, eliminating the provision in question does not necessarily affect the validity and operation of the contract as a whole, but the whole instrument may be examined to determine, if possible, the real intention of the parties to the contract and the object and purpose they had in entering into it. Such an examination of the policy introduced in evidence readily discloses ample provisions whereby the defendant company undertakes to indemnify the insured against loss caused by bodily injury sustained through accidental means, including loss of life, and inasmuch as the defendant frankly admits that the evidence conclusively shows that the insured died from sarcoma, a malignant disease, which disease was the direct and immediate result of a bodily injury sustained by the insured through the accident alleged, this is all that is necessary to establish the defendant's liability, so far as the point now under consideration is concerned.

In this view of the case, it becomes unnecessary to inquire what facts and circumstances are necessary to exist in order that the disease of which the insured died will be held to be the result of a bodily injury sustained through accident. If authorities upon that point were necessary, they may be found in *Ward v. Ætna Life Ins.*

*Co.,* 82 Neb. 506, and *Delaney v. Modern Accident Club,* 121 Ia. 528, and cases therein cited.

The second assignment of error is that the court erred in allowing the item of $7,500 for the death of the insured, because claimant may not recover therefor for the reason that death did not occur within 90 days from date of accident. The provision of the policy sought to be invoked reads:

"Section 1 (a). If such injury, within 90 days from date of accident, irrespective of disability, causes the insured to sustain a loss enumerated in this section, the company will pay the sum specified for such loss as follows: For loss of life, $7,500."

The plaintiff, however, disclaims any attempt to recover under the above provision, admitting that the insured did not die within 90 days from date of accident, but relies wholly upon subdivision (d) of the same section, which reads as follows:

"(d) If such injury, from date of accident, causes the insured to be totally and continuously unable to transact all business duties and, during the period of such disability and within 208 weeks, results in a loss enumerated in this section, the company will pay the sum specified for such loss and in addition, until the loss occurs, indemnity at the rate per week of $25."

We are of the opinion that if claimant shows herself entitled to recover under subdivision (d), if that subdivision stood alone, then she may recover under said subdivision, notwithstanding more than 90 days had elapsed from the date of accident to the date of death, the limitation in subdivision (a), for the reason that subdivision (d) imposes new and additional conditions precedent to a recovery not contained in subdivision (a). Passing over the defendant's second assignment, we come then to the consideration of subdivision (d), as above quoted, which is involved in the defendant's third assignment of error.

The defendant claims the court erred in holding that

the insured was totally and continuously unable to per-- form all of his business duties from date of accident, about March 1, 1919, until his death, September 5 of the same year, and that it is impossible to correctly so hold under the uncontradicted evidence in the case.

A proper solution of the controversy on this point, therefore, must depend upon determining, under the facts and circumstances disclosed by the evidence, when one insured sustaining an injury through accident may be said to be rendered "totally and continuously unable to per- form all of his business duties from date of accident." The evidence upon this point shows that, prior to the injury in question, Doctor Rathbun had enjoyed excellent physical and mental health and was unusually active and industrious in the practice of his profession of surgery; that for the first few days following the injury he suffered much pain, but at the end of which time the pain sub- sided for the space of about two weeks, the doctor, in the meantime, continuing the practice of his profession as be- fore, performing various operations coming to him, both of major and minor character, in the city, as also in sur- rounding towns and country, but at the end of that time, upon the pain and lameness returning, the doctor, al- though endeavoring to continue much of his work, was compelled to do so under more or less stress and discom- fort by reason of his injured hip, and as his pain and dis- comfiture increased his professional labors gradually de- creased until the month of June, 1919, when he left his office and never returned, and from which time he grew worse until his death, September 5 of the same year.

Of course, this provision of the contract, as all other parts thereof, must be given a practical and rational con- struction—one consistent with reason and common fair- ness, and with a view to avoiding a forfeiture, rather than enforcing one, if the terms of the instrument will fairly and justly permit it.

It appears from the evidence that after the first three days of severe pains there was an intermission of about

two weeks in which the doctor suffered but little or no inconvenience from the injury, and during which time he was able to, and did, perform his professional duties much the same as before the accident, but at the end of which time the pains and lameness returned and increased in severity to the end. Passing for the present the two weeks intermission, and coming to the time when pain and lameness reoccurred, the detailed evidence of Doctor Buchanan, who was with him every day after the 22d of March, and who, with one Doctor Painter, was closely associated with Doctor Rathbun, shows that whatever professional duties Doctor Rathbun undertook from that time on he did with difficulty and much discomfort to himself; he would sit while in the performance of some part of an operation, a thing he was never known to do before; he would ask his associates to do many things in and about the operation that always before he was accustomed to do himself, at which time he would "go off and sit down or lie down," also a thing he had never been known to do before; and that, in the opinion of Doctor Buchanan, Doctor Rathbun, during this period, was not in a fit condition, either physically or mentally, to perform a surgical operation, notwithstanding the operations performed during that period for the most part proved successful.

Now, shall it be said that because Doctor Rathbun performed some professional duties after his injury, under the stressful conditions it is shown he did perform them, and which conditions continued to increase until they culminated in his death, a recovery for his death shall be wholly defeated by this "total disability" clause in the policy? We think not. As was said in the case of *Fidelity & Casualty Co. v. Joiner*, 178 S. W. (Tex. Civ. App.) 806:

"We agree it conclusively appeared, as claimed, that the assured after he suffered the injuries performed duties pertaining to his occupation, but we do not agree that his doing so established as a matter of law that he

Rathbun v. Globe Indemnity Co.

was not 'totally disabled' within the meaning of those words as used in the policy. It not infrequently happens that one suffering from injuries to his person performs duties pertaining to his occupation which he is wholly unable, in the reasonable and proper sense of those words so used, to perform; and that, as a consequence, because he was unable to do same, he suffers death or an aggravation of his injuries. In a case in which such a result follows the performance of the duty, the performance thereof, instead of establishing that the assured was able to perform it, it seems to us, would establish the contrary. We think therefore that to construe the language in the policy what appellant contends it means would be unreasonable."

Surely the defendant will not contend that it is entitled to an absolutely literal construction of the clause in question, and that the performance, by the insured, of anything whatsoever in the line of his business, or professional duties, no matter how trivial, or under what circumstances it may have been performed, would bar a recovery. Such a claim would be unreasonable, yes, even absurd. To illustrate: Suppose Doctor Rathbun had been confined to his bed unable to rise therefrom because of severe pains and lameness he was suffering from the injury, yet under these conditions he might still be able to consult with and prescribe for patients, and even perhaps have dressed a wound, and that he had done so, would the defendant or any one say that for that reason he was not a subject of "total disability," under a proper and reasonable construction of these words as employed in the policy? We think no one could contend for a thing so unreasonable. To do so would be equivalent to a claim that "the defendant would be liable in no case unless, by the accident, the insured should lose his life or his reason." *Thayer v. Standard Life & Accident Ins. Co.,* 68 N. H. 577.

We think the evidence shows that the conditions under which the insured undertook to prosecute his professional

Rathbun v. Globe Indemnity Co.

duties after the latter part of March were much the same in character as those suggested in the illustration, which. he might have done in bed, although perhaps not so extreme. Except for the part the doctor took in actual operations, what he might have done in bed he undertook to do upon his feet and while sitting down at a time when under all probability he ought to have been in bed. Should the insured be penalized because, in total ignorance of the serious character of the injury he had received, he undertook to perform, as best he could, under distressing conditions, some of his professional duties, when he might reasonably not have attempted to do any work at all, and thus, without question, have held the insurer liable for loss from disability? Upon this point what the appellate court of Indiana said in the case of *American Liability Co. v. Bowman,* 114 N. E. 992 (65 Ind. App. 109), is apt:

"Under an accident policy providing for indemnity for total disability during the period that the insured was totally and continuously from the day of the accident disabled and prevented from performing every duty pertaining to any business or occupation as a necessary result of the injury received, an injured workman can recover for the entire period in which he was, as a matter of fact, totally disabled, though he returned to work for a short time after the accident, when he was in such a condition that he could perform only part of his duties and he might reasonably not have attempted to do any work, since a construction of the policy which would defeat recovery because of a *bona fide* attempt to work would tend to penalize such an attempt and encourage fraud and imposition on the company by remaining away from work when able to perform it."

For further illustrations upon this point, as well as to the construction the courts have given to the words "every" duty and "all" business duties, and to the phrase "any and every" kind of business, and other similar words and phrases frequently contained in accident insurance

policies, see *Metropolitan Casualty Ins. Co. v. Cato,* 113 Miss. 283; *Commonwealth Bonding & Casualty Ins. Co. v. Bryant,* 185 S. W. (Tex. Civ. App.) 979; *Gross v. Commercial Casualty Ins. Co.,* 90 N. J. Law, 594; *National Life & Accident Ins. Co. v. O'Brien's Exrx.,* 155 Ky. 498; *North American Accident Ins. Co. v. Miller,* 193 S. W. (Tex. Civ. App.) 750.

Recurring now to the two weeks' intermission in which the insured suffered but little or no pain, and consequently but little or no interruption in the prosecution of his ordinary professional labors, between the first three days of severe pain and the end of the two weeks, when pain and lameness returned, it is claimed by the defendant that this fact itself conclusively shows that the insured was not "continuously unable to transact all business duties from date of accident," and that the plaintiff is therefore not entitled to recover for the death loss under the provision above quoted. But, again, we feel compelled to hold, under the authorities above cited and others to be cited hereafter, that neither can this point be sustained.

We think it may be said to be a matter of common knowledge that in a great many, perhaps in a large majority of, instances in which bodily injuries are received, the real nature and extent of said injuries do not reveal themselves until a greater or less time in the future and after the first pains from the hurt shall have passed away. The injured part often lies dormant for an indefinite period, with but little or no consciousness of its existence by the person injured, although from the very moment of the accident, perhaps, the processes of nature may be busily engaged in developing what may have seemed to be but a slight hurt into a most serious and perhaps fatal injury. In such a case it cannot be said that the injury is not continuous and from the date of the accident, nor can it fairly or justly be said that the disability is not continuous and from date of the accident, because the injured party enjoys a brief respite from pain

and suffering, only to be endured to a greater degree when perverted nature again asserts itself. Occurring then under the circumstances stated, to hold that a brief respite from the conscious ill effects of an injury during which respite the insured was able to transact the most, if not all, of his ordinary business should bar recovery, seems to us neither reasonable nor just. It is the undisputed evidence that at the end of two weeks the injury to the insured grew worse and worse until it culminated in his death five months later. All of the medical witnesses testified that the insured died of sarcoma, a malignant disease, and that the disease had its origin in the injury sustained, and that it was a gradual development from the date of injury to the date of death.

In the case of *Order of United Commercial Travelers v. Barnes,* 72 Kan. 293, "immediately" was the word employed in the policy, instead of "date of accident" in the case at bar. It must be admitted that the former term bears as strong, or even stronger, significance as to the time of beginning than does the latter, and yet in that case the court held: "The word 'immediately', as applied to the language of the indemnity contract stated in the first paragraph of this syllabus is not synonomous with 'instantly,' 'at once,' and 'without delay.' A disability is immediate, within the meaning of such contracts, when it follows directly from accidental hurt, within such time as the processes of nature consume in bringing the person affected to a state of total incapacity to prosecute every kind of business pertaining to his occupation." In the opinion the court said (p. 305): "If the conditions of the contract can be extended so that the word 'immediately' does not mean 'instantaneously,' 'at once,' and 'without delay' (as all courts agree), then a greater stretch of the conditions cannot be said to be unreasonable in allowing for the period that nature halts before inflicting penalties for her violated laws. In such cases the disability is immediate, within the meaning of the

policy." See, also, *Continental Casualty Co. v. Matthis,* 150 Ky. 477.

The defendant has cited a variety of cases in which the words "all," "each" and "every" and other similar terms have been construed, but we think in most instances in a different class of cases than the instant one and under different circumstances than those existing in the case at bar. It likewise cites some in which the terms of the policy have been construed more strictly against the insured, but we think the rules we have applied in this case, supported as they are by the authorities herein cited, are less technical and more consonant with reason and practical justice than are those applied in the cases cited by defendant. For the reasons given, therefore, we think the defendant's third assignment of error should be overruled.

Another complaint of defendant is that the court allowed an item of $125 for hospital expense, without any proof thereof. Hospital indemnity was one of the items provided for in the policy, and plaintiff made proof of the fact that the insured was actually confined in a hospital for the full time for which charge was made, but did not prove actual payment therefor or that a debt was actually incurred thereby. The provisions in the policy did not require either of these as a prerequisite to indemnity. And, as it is proved that the insured actually occupied a place in a hospital for the required time, an obligation on his part, or on the part of his estate, to make reasonable compensation therefor will be presumed; and, as the policy fixes what the compensation to the insured shall be, that is sufficient to require payment of this item by the defendant.

The court rendered judgment for plaintiff in the sum of $8,659 and costs of suit, to which was added an attorney's fee in the sum of $1,167.67, to be taxed as part of the costs, and the same to bear interest at 7 per cent. per annum from date of allowance. The defendant complains of the amount allowed as attorney's fees as ex-

cessive, and that the court erred in holding that the same should draw interest. As was stated in the early part of this opinion, the defendant offered no direct testimony in its own behalf, but contented itself with the cross-examination of plaintiff's witnesses, and there was but little or no controversy upon the facts. It is claimed by counsel for plaintiff, however, that he was not aware that defendant would take this course until he had prepared for a serious contest. However, without disparagement of counsel's ability or belittling the importance or amount of labor bestowed by him in the case, we are of the opinion that in justice to all concerned this amount might well be reduced to a sum equivalent to 10 per cent. of the judgment recovered, or $865.90. See *Bruner Co. v. Fidelity & Casualty Co.,* 101 Neb. 825. The court below allowed interest on this item, but we are of the opinion that no interest should be allowed. An additional sum of $150 will be allowed the plaintiff for attorney's fees in this court.

The judgment of the lower court, modified as above indicated, will therefore be affirmed.

AFFIRMED AS MODIFIED.

FLANSBURG, J., dissenting.

It seems to me there can be no recovery in any event in this case, for the reason that the policy provides that there shall be no liability unless the injury shall, *from the date of the accident,* cause the insured to be totally and continuously unable to transact all business duties. The fact here was that for a period of two weeks after the injury the insured was about his business as usual. It was not the original injury, standing alone, which produced and brought about the death of the insured. It was the cancer resulting from, and no doubt brought on by, the original injury.

As to the question of the proximate cause of death, the injury may be considered to have been that proximate cause, since, through that injury and the processes of nature following it, death resulted; but, in order to de-

termine whether or not that resulting death, even though it may be held to have been proximately caused by the original injury, is covered by the policy, we must look alone to the terms and limitations contained in the policy itself.

It is quite clear that the insured was not totally and continuously, from the date of the accident, disabled. From all outward manifestations, the cancer did not have its inception or begin its growth for two weeks, or even a longer period, after the accident had been sustained. It is entirely legitimate that the company should limit its liability, in case of death, to those occasions where death results within a given period from the date of accident, such as a 90-day period, or where death results from an accident which continuously and totally disables the insured. Such provisions are reasonable. Where liability is confined to death resulting from such accidental injuries, some proof is furnished, by the fact of continuous and total disability immediately following and continuing from the date of the accident, that the accident was, itself, the cause of death, and that death was not due to some new and later intervening or contributing cause. The company may desire to write a policy to cover those deaths only which in such manner appear to be more directly connected with the accident, and this it is entirely free to do.

It seems to me, under this provision alone, and more especially when considered in the light of the clause providing that the company should not be liable where death was contributed to by disease, that the loss in this case is not covered, and that the beneficiary is not entitled to a judgment.