## C. E. JONES v. FIDELITY & CASUALTY COMPANY OF NEW YORK.[1]

January 29, 1926.

No. 25,001.

**Notice of death given to insurer as soon as was reasonably possible.**

1. The evidence sustains the finding of the jury that notice of death resulting from an accidental injury was given to the defendant insurance company as soon as was reasonably possible within the meaning of the policy.

**By denial of liability insurer waived proofs of loss.**

2. The evidence sustains the finding of the jury that the defendant denied liability upon the policy and thereby waived proofs of loss.

**Where no dispute as to amount of disability payment due, no consideration for release of all liability.**

3. The insured received the defendant's draft for the amount due him as indemnity for disability. In an instrument attached thereto he acknowledged receipt and released all liability under the policy. There was no dispute as to the amount which he should receive and no compromise. It is *held*, as a matter of law, that there was no consideration for the release of liability, and the trial court's charge to that effect was correct.

**Death resulted necessarily and solely from injury within terms of policy.**

4. The evidence sustains the finding of the jury that death resulted necessarily and solely from his injury within the terms of the policy quoted in the opinion.

**Question for jury whether insured died within his continuous total disability to engage in labor.**

5. Whether the death of the decedent occurred during the period of his continuous total disability to engage in any labor or occupation within the terms of the policy quoted in the opinion, although he returned to work, and with some intermissions worked until his death,

[1]Reported in 207 N. W. 179.

which occurred two and one-half months after his injury, was for the jury.

Accident Insurance, 1 C. J. pp. 482 n. 16 New; 506 n. 58, 72, 73 New; 509 n. 13 New.

Action in the district court for Ramsey county to recover upon an insurance policy. The case was tried before Bechhoefer, J., and a jury which returned a verdict for $5,500 in favor of plaintiff. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Briggs, Weyl & Briggs* and *A. V. Junkin,* for appellant.

*Stan D. Donnelly & Warren Newcome,* for respondent.

DIBELL, J.

Action by the plaintiff as administrator of James B. Oglesby to recover upon a policy of insurance on his life. There was a verdict for the plaintiff. The defendant appeals from the order denying its alternative motion for judgment or a new trial.

Oglesby held a policy in the defendant providing indemnities in case of accidental injury; and for loss of life resulting, under certain conditions, from injury. He was a chef in the employ of the Soo railway line, his run extending from Minneapolis to Chippewa Falls, Wisconsin. On January 12, 1924, he was hurt by an automobile. There was a severe abrasion on his left leg, one rib was fractured, and he was otherwise bruised. The defendant paid him his weekly indemnity until February 27, 1924, by a draft for $128.57. Attached to it was a receipt, which he signed, reciting that he released the company "from all liability for or on account of bodily injuries accidentally sustained by me on or about 12th day of January, 1924." He returned to his work February 18, 1924, and continued with two intermissions until he died on April 28.

Notice of his death was not given until July 18, 1924, 10 days after the appointment of the plaintiff as administrator. No proofs of loss were given.

The questions are these: (1) Whether there was a failure to give notice of death as required by the policy. (2) Whether there was a

failure to furnish proof of death as required by the policy. (3) Whether the release executed by Oglesby, when he received the draft for $128.57, released liability under the policy for death subsequently ensuing. (4) Whether his death resulted necessarily and solely from his injury within the meaning of the policy. (5) Whether his death occurred during the period of continuous total inability to engage in any labor or occupation within the meaning of the policy.

1. Notice of the injury of January 12, 1924, was given the company promptly. Notice of death was not given until July 18, 1924. The policy provides:

"Written notice of injury on which claim may be based must be given to the company within twenty days after the date of the accident causing such injury. In event of accidental death immediate notice thereof must be given to the company.

"Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the company at its home office in New York City or to any authorized agent of the company, with particulars sufficient to identify the insured, shall be deemed to be notice to the company. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

Oglesby had no relatives in the state. They lived in the south and east. The plaintiff, with whom he lived, and who knew of the policy, sought to locate them immediately upon his death. He did not succeed in doing so until in August. The decedent's relatives had the prior right, for 30 days, to apply for administration. The plaintiff was appointed administrator on July 8, 1924. Within 10 days he gave the defendant notice; or at least the evidence justifies a finding that he did. The heirs of the deceased were the beneficiaries. Not until July 8, when plaintiff became administrator, did he have a direct interest in the policy. The terms of the policy in respect of notice are liberal. It was not intended to bar beneficiaries by a strict limitation or a narrow construction. Whether notice was given as soon as was reasonably possible was submitted

to the jury, under appropriate instructions, and its finding is sustained.

2. Formal proofs of death were not made. The policy provides:

"The company, upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made.

"Affirmative proof of loss must be furnished to the company at its said office in case of claim for loss of time from disability within ninety days after the termination of the period for which the company is liable, and in case of claim for any other loss, within ninety days after the date of such loss."

The testimony of counsel for the plaintiff, no counsel appearing at the trial, is that he notified the district agent at St. Paul on July 18, 1924, by telephone; that he was referred to the representative of the company at Minneapolis; that he telephone such representative, explained the situation, and stated that he wanted to give whatever notice was necessary; that such representative said that he thought the company had a release and requested him to wait a moment; that he then told him, after consulting his files: "Yes, we have a release on that;" and later told him that he would see what the home office would do about reopening the case, but that the company was already released. Some weeks later he was told that the company would not reopen the case.

The jury were justified in finding that the company, through its representative, denied liability; that it relied upon the release as a settlement, as it does here; and that there was a waiver of proofs of death. See Zeitler v. National C. Co. 124 Minn. 478, 145 N. W. 395; Johnson v. Bankers M. C. Ins. Co. 129 Minn. 18, 151 N. W. 413, L. R. A. 1915D, 1199, Ann. Cas. 1916A, 154; Butler Bros. v. American F. Co. 120 Minn. 157, 139 N. W. 355, 44 L. R. A. (N. S.) 609.

3. The release upon which the defendant relies did not discharge liability on the policy for death subsequently occurring. The receipt was for the amount paid as indemnity. It was due. There was no dispute about it and no compromise. There was no negotiation for a release or surrender of the policy, or for a discharge from further liability in event of death. The court correctly charged the jury that there was no consideration for the release as a discharge of liability for subsequent death. Thompson Yards Inc. v. Jastrow, 163 Minn. 329, 203 N. W. 960; Duluth C. of C. v. Knowlton, 42 Minn. 299, 44 N. W. 2; Demeules v. Jewel Tea Co. 103 Minn. 150, 114 N. W. 733, 14 L. R. A. (N. S.) 954, 123 Am. St. 315.

4. The provision of the policy as to the scope of the insurance and the indemnity is as follows:

"Part I. Insuring Clause.

"If the Insured, while this policy is in force, shall receive a personal bodily injury (suicide, sane or insane, not included) which is effected directly and independently of all other causes through external, violent, and purely accidental means, and which causes at once and continuously after the accident total inability to engage in any labor or occupation, the Company will pay the indemnities hereinafter provided for loss resulting therefrom."

"Part II. Specific Indemnity.

"If within the limit of time named in this part and during the period of total inability to engage in any labor or occupation, any one of the following losses shall result necessarily and solely from said injuries causing the said inability as is described in Part I, the Company will pay, subject to the provisions of Part VI:

"A. For loss of life said principal sum."

Whether Oglesby's death resulted from a bodily injury within the insuring clause was for the jury. The plaintiff's experts testified

that his death resulted from septic embolic pneumonia as the direct result of his injury of January 12, particularly the abrasion of the leg. There was no medical testimony opposed. The finding is sustained. Thorne v. Aetna Life Ins. Co. 155 Minn. 271, 193 N. W. 463; Powers v. Fidelity & C. Co. 144 Minn. 282, 175 N. W. 111.

5. Whether the death of the deceased occurred within a period of continuous and total inability to engage in any labor or occupation, within the terms of the policy quoted, was for the jury.

The deceased returned to his work on February 18, 1924, after his injury of January 12. He continued to work until March 8, then laid off until March 15, worked from then to April 18, and was confined to his bed from that time until April 28, when he died. The evidence justified the finding that when he returned to his work he was in no condition to resume his labor; that he did not do full work; that he received assistance from those working under him or with him; that he worked with difficulty; that at the intervals in St. Paul between his trips out and in he was sick and suffering and confined much of the time to his home; that he suffered from chills and fever; that he was losing flesh; and that from the time of his injury until his death his injury was progressing toward a fatal result.

We have no cases in Minnesota that meet the exact situation. Provisions resembling those of the policy in suit were construed and a liberal rule of construction adopted in favor of the insured in Lobdill v. Laboring Men's Mut. Aid Assn. 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537, 65 Am. St. 542; Monahan v. Supreme Lodge O. C. K. 88 Minn. 224, 92 N. W. 972; Collopy v. Modern B. of A. 133 Minn. 409, 158 N. W. 625; McKay v. Minnesota C. M. Assn. 139 Minn. 192, 165 N. W. 1061; Hayes v. North Am. L. & C. Co. 151 Minn. 124, 186 N. W. 136; and Carson v. N. Y. Life Ins. Co. 162 Minn. 458, 203 N. W. 209. In the Lobdill case Mr. Justice Mitchell said that "total disability does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It is sufficient if his injuries were of such a character that common care and prudence required him to desist from the transaction of any such business so long as it was reason-

ably necessary to effectuate a cure." In none of these cases was the period during which the insured worked long, in none nearly so long as that during which the deceased worked; but the language of Justice Mitchell points the true construction.

The following cases more resemble in their facts the case at bar and illustrate the proper application of the principle. Rathbun v. Globe Ind. Co. 107 Neb. 18, 184 N. W. 903, 24 A. L. R. 191; Booth v. U. S. F. & G. Co. (N. J. Sup.) 130 Atl. 131; American L. Co. v. Bowman, 65 Ind. App. 109, 114 N. E. 992; Fidelity & C. Co. v. Joiner (Tex. Civ. App.) 178 S. W. 806; Grand Lodge v. Orrell, 206 Ill. 208, 69 N. E. 68; Hohn v. Inter-State C. Co. 115 Mich. 79, 72 N. W. 1105; Young v. Travelers Ins. Co. 80 Me. 244, 13 Atl. 896.

Thus, in Booth v. U. S. F. & G. Co. (N. J. Sup.) 130 Atl. 131, the court said:

"To say that it did not wholly disable and prevent the insured from the date of the accident from performing his duties, because he endeavored to perform them, is to put a strained and unfair interpretation upon the term used, and to do violence to the obvious purpose of the contract. The fact that Booth tried to work is not to be taken as conclusive evidence of his ability to do so. * * * Plaintiff should not be penalized for honest efforts to keep going when nature demanded that he desist."

In Rathbun v. Globe Ind. Co. 107 Neb. 18, 184 N. W. 903 (24 A. L. R. 191), the court proposed and answered in the negative this question (p. 30):

"Should the insured be penalized because, in total ignorance of the serious character of the injury he had received, he undertook to perform, as best he could, under distressing conditions, some of his professional duties, when he might reasonably not have attempted to do any work at all, and thus, without question, have held the insurer liable for loss from disability?"

And commenting upon the situation before it the court said (p. 31):

"We think it may be said to be a matter of common knowledge that in a great many, perhaps in a large majority of, instances in which bodily injuries are received, the real nature and extent of said injuries do not reveal themselves until a greater or less time in the future and after the first pains from the hurt shall have passed away. The injured part often lies dormant for an indefinite period, with but little or no consciousness of its existence by the person injured, although from the very moment of the accident, perhaps, the processes of nature may be busily engaged in developing what may have seemed to be but a slight hurt into a most serious and perhaps fatal injury. In such a case it cannot be said that the injury is not continuous and from the date of the accident, nor can it fairly or justly be said that the disability is not continuous and from date of the accident, because the injured party enjoys a brief respite from pain and suffering, only to be endured to a greater degree when perverted nature again asserts itself."

And in American L. Co. v. Bowman, 65 Ind. App. 109, 114 N. E. 992, the court said (p. 119):

"The facts found are amply sufficient to show total disability of appellee for the requisite period of time, and the chief difficulty arises from a consideration of those facts which show that four days after his injury, while still suffering from the effects thereof, he returned to his work and for more than a month performed a large part of the duties of his employment, though during all such time he continued to suffer intensely and was greatly incapacitated, and then finally, from the effects of his original injury, which had become more severe and malignant, he became wholly unable to perform any labor of any kind and was confined to his home for treatment; and likewise the finding which shows that the injury caused neuritis. * * *

"The findings disclose a situation where the injury was more severe and the results more permanent and harmful than they first appeared to be, and in which the injured party showed unusual desire, and put forth an extraordinary effort, to labor while still incapacitated by his injuries. He was in no sense a malingerer, and

the facts present the question whether, by his premature effort to labor while so incapacitated, he is, under the provisions of his policy, deprived of compensation which he would clearly be entitled to receive had he remained away from his employment and made no effort to labor, as the severity of his injury and the intensity of his suffering clearly warranted him in doing.

"The rule prevails in this and most jurisdictions that provisions in a policy for total disability, irrespective of the technical variations in the language employed, should be given a rational and practical construction; that the phrase 'total disability' is a relative term, depending in a measure upon the nature of the employment, the capabilities of the injured person, and likewise the circumstances and peculiar facts of each particular case. It is usually a question of fact to be determined by the court or jury trying the case and was such question in the case at bar."

There are many cases opposed and counsel for defendant cite them. In Hurley v. Bankers Life Co. 198 Iowa, 1129, 199 N. W. 343, 37 A. L. R. 146, cases adopting the two different rules, the liberal one and the strict one, are collated. Citing this case and referring to the cases noted in it, in Carson v. N. Y. Life Ins. Co. 162 Minn. 458, 203 N. W. 209, we announced a preference for the liberal rule illustrated by the cases which we have cited.

Order affirmed.