GEORGE L. BRINTON, APPELLEE, V. GRAND LODGE, ANCIENT ORDER OF UNITED WORKMEN, APPELLANT.

FILED APRIL 14, 1933. No. 28489.

*Ray M. Higgins* and *W. G. Kieck,* for appellant.

*O. B. Clark* and *L. R. Doyle, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY and PAINE, JJ.

GOSS, C. J.

Plaintiff held an "ordinary life benefit certificate," here-inafter called a policy, issued by defendant. He sued on the policy for total permanent disability and had judgment for $542. Defendant appealed.

Plaintiff had been a plasterer and mason for about 25 years, is 58 years old and has resided at Elmwood for 17 years. He had been a member of defendant fraternal order and insured therein 18 years. About four years ago the rates were raised and the present policy was issued in lieu of the former one. In January, 1930, he first noticed manifestations of heart trouble. About July 18, 1930, while he was plastering in Elmwood, a scaffold collapsed and he fell, injuring his foot so that it was in a cast for four weeks. Then he walked with the aid of crutches for about eight months.

The policy provided: "If the member becomes totally and permanently disabled, whether by accident or disease, while this certificate is in full force, and if the fact and cause of such total and permanent disability shall be proved to the satisfaction of the Order upon blanks provided for that purpose, the member shall be placed upon probation for a period of six months, during which period all assessments and dues shall continue to be regularly paid by said member. At the end of such probation period, if the disability continues, the Order will consider it total and permanent and will pay to the member in cash, the entire reserve value of this certificate or the sum of Five Hundred and no/100 Dollars (one-half the face amount of this certificate), whichever amount is the greater, as a total permanent disability benefit, upon the surrender of this certificate properly receipted."

The issue was whether the accident and plaintiff's disease totally and permanently disabled him within the meaning of the policy.

The school board for which plaintiff was working when injured paid him compensation for 47 weeks. He has been unable to do the physical work of plastering entailed in the handling and spreading of plaster. More than ordinary walking or use of his injured leg causes his ankle to swell and pain him. Physical exertion produces objective symptoms of angina pectoris. He has ceased to take contracts for plastering and execute them as he did before his injury. His 23 year old son carries on that business. Plaintiff, by reason of his acquaintance and experience, is able to aid in securing for the son that sort of engagements, to make the estimates and to supervise the work to some extent. The father gets no definite wages. The son gives him such financial support as he needs. Plaintiff has no preparation or capacity for mental or clerical work. A physician testified that he ought not to engage in manual labor.

The assignments of error are two: First, that the evidence was insufficient to support the verdict; and, second, that the court erred in the instruction to the jury defining total disability.

The evidence already recited was ample to support a verdict under the quoted terms of the contract set up in the policy. Plaintiff's condition of total disability continued almost without evidential contradiction for a much longer period than that of the contracted "probation for a period of six months" after his accident. Defendant agreed in the policy that, at the end of the probation, if the disability continued, it would consider it "total and permanent" and pay the insured either the reserve value or $500.

The insurer having denied liability, the court's instruction defined plaintiff's condition as one of total disability, if he was wholly incapacitated by accident and disease, or either of them, from performing any and every kind of business for which he was qualified, either as a plasterer, mason, or manual laborer, even though his injury would not prevent him from doing mental work if he

was fitted for it. This last idea of "mental work" is said by defendant to have misled the jury. The argument of defendant, as we understand it, is that the court meant thereby to say that plaintiff might still be capable of what defendant describes as "a more reputable or more dignified occupation, earning just as much money and still be considered totally permanently disabled." The instruction would naturally be understood by the jury in the setting in which it was given. Defendant had little of what is commonly known as education, as he testified and as his oral and written language showed. He could measure walls and estimate costs in the line of his life-work. The intent of the instruction, of course, was to tell the jury that, to the extent that the evidence showed he could do that type of mental work, it would not negative total permanent disability. The jury were not likely to understand that, if he had suddenly become an Einstein or a Shaw, and fabulously increased his income by reason of a mentality undiscovered before, but promoted by, his disease and accident, they were still to find that he was totally and permanently disabled. We do not regard the instruction as prejudicial to defendant.

On this subject of total disability, "the several provisions contained in an accident insurance policy will be given a practical and rational construction, one consistent with reason and common fairness, and with a view to avoiding, rather than enforcing, a forfeiture, if the terms of the instrument will fairly and justly permit it." *Rathbun v. Globe Indemnity Co.,* 107 Neb. 18; *Eastep v. Northwestern National Life Ins. Co.,* 114 Neb. 505. None the less ought this rule to be applied in the construction of a contract of insurance between a fraternal order and one of its members.

The judgment of the district court is

AFFIRMED.