HARRY S. MURPHY, APPELLANT, V. TRAVELERS INSURANCE COMPANY, APPELLEE.

2 N. W. (2d) 576

FILED FEBRUARY 20, 1942. No. 31078.

*Wear, Boland & Nye,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda, contra.*

Heard before PAINE, CARTER and MESSMORE, JJ., and ELDRED and TEWELL, District Judges.

CARTER, J.

This is a suit to recover benefits under the provisions of two policies of accident insurance. At the close of all the

evidence both parties moved for a directed verdict. The trial court sustained the motion of the defendant and entered a judgment against the plaintiff. From this judgment the plaintiff appeals.

The plaintiff was a dentist. For twenty years prior to the date of the alleged accident he had used an X-ray machine in the practice of his profession. In taking X-ray photographs it had long been his practice to insert the index finger of his left hand in the patient's mouth in order to hold the film firmly against the teeth while the pictures were being taken. It is not disputed that this practice, long followed by the plaintiff, eventually resulted in the X-ray burns and the injuries complained of in this case. There is no evidence in the record of excessive exposure to the X-ray on any specific occasion; nor is there any evidence of mischance, slip or mishap occurring in the performance of his professional duties.

The record shows that on February 8, 1936, plaintiff observed that the skin on the index finger of his left hand broke open and a secretion began to emit therefrom. On November 15, 1938, the skin in the palm of his left hand cracked open. On February 7, 1939, the hand became so bad that plaintiff sought the advice of medical specialists in Chicago. On March 10, 1939, an operation was performed upon the hand and the afflicted portions thereof amputated. It is not questioned that plaintiff was unable to practice his profession after the operation was performed. The evidence shows, however, that plaintiff was able to continue his practice with the aid of assistants up to October, 1938, and that he discontinued the practice of dentistry at that time. It is admitted that one policy lapsed in September, 1936, and the other in November, 1936. The first question to be determined is whether the foregoing facts are sufficient to establish an accident within the meaning of the insurance contracts.

The applicable provisions of one policy are:

"The Travelers Insurance Company * * * does hereby insure * * * Dr. Harry S. Murphy * * * against loss, as

herein defined, resulting directly, independently and exclusively of any and all other causes from bodily injury effected solely through accidental means, as specified in the following schedules: * * *

"Or, if such bodily injury * * * shall directly, independently, and exclusively of all other causes and within thirty days from date of accident, wholly and continuously disable and prevent the insured from attending to any and every kind of duty pertaining to his occupation, the company will pay the insured so long as he lives and is so disabled, the single weekly indemnity aforementioned."

The applicable provisions in the other policy are:

"The Travelers Insurance Company * * * does hereby insure Harry S. Murphy * * * against loss resulting from bodily injuries, effected directly and independently of all other causes, through external, violent and accidental means (suicide, sane or insane is not covered). * * *

"Or, if such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the insured from the date of accident from performing any and every kind of duty pertaining to his occupation, the company will pay, so long as the insured lives and suffers such total disability, a weekly indemnity of * * *."

Actions were filed on November 25, 1939, on both policies. Plaintiff seeks to recover weekly indemnity in each case for total disability from November 15, 1938, to November 15, 1939, together with a weekly indemnity for the three weeks that plaintiff was confined in the hospital.

We are of the opinion that, when an unusual, unexpected, and unforeseen injury or death results from an intentional act of the insured, the ensuing injury or death is caused by accidental means, even though no mischance, slip, or mishap occurred in the doing of the act. It is the contention of defendant that, while the result was accidental in the sense that it was unintentional, it was not caused by accidental means within the purview of the language of the policy. We do not think the attempted distinction between accidental means and accidental result can properly be made.

The insured did not do anything which was ordinarily considered dangerous, although the possibility of danger was known if the practice were persisted in over a long period of time. The amount of tolerance to exposure to the X-ray without injurious effect varies with the individual. The accident was not the casual exposure of the fingers to the X-ray, but the cumulative overdose of it which was unexpected and unanticipated, and which resulted from almost daily exposure too long continued. The break down of the tissues evidenced by the breaking of the skin and the subsequent cancerous condition clearly marks the date of the accident. The fact is that an external force, ordinarily not harmful, was suddenly and unexpectedly transformed into a force of violence which severely injured plaintiff's hand. If there was an accidental result there necessarily was an accidental means, the two cannot logically be separated. There was no cause intervening, from the time plaintiff's finger first showed signs of injury until the amputation was performed, which could reasonably be called an accident. The process of causation was unbroken and progressive from the time the cumulative effect of the exposures manifested itself until the amputation was performed. Either there was no accident at all, or there was an accident throughout. We think there was an accident throughout within the reasonable intendments of the policies. This view is not only the more reasonable, but is supported by very persuasive authority.

In *Western Commercial Travelers Ass'n v. Smith,* 85 Fed. 401, the court very aptly said: "The significance of this word 'accidental' is best perceived by a consideration of the relation of causes to their effects. The word is descriptive of means which produce effects which are not their natural and probable consequences. The natural consequence of means used is the consequence which ordinarily follows from their use,—the result which may be reasonably anticipated from their use, and which ought to be expected. The probable consequence of the use of given means is the consequence which is more likely to follow from their use

than it is to fail to follow. An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing under the maxim to which we have adverted, is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

In *United States Mutual Accident Ass'n v. Barry*, 131 U. S. 100, 9 S. Ct. 755, the insured voluntarily jumped from a platform, 4 or 5 feet high, to the ground, and it was alleged that the jar from the jump produced a stricture of the duodenum from the effects of which death ensued. It will be noted in this case that the act was intentional and that the resulting jar at the time of landing was certainly contemplated. Only the result was unexpected. The court said (p. 121) : "It must be presumed not only that the deceased intended to alight safely, but thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not. The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was, whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the

usual course of things; or not as expected;' that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

In *Wiger v. Mutual Life Ins. Co.*, 205 Wis. 95, 236 N. W. 534, in answering the contention that the means of death were not accidental, because they were "set in motion by the voluntary act of the decedent," and that "the consequences were the result of this act, without the intervention of any mischance or slip in the doing of the act," the court said: "It is our conclusion that the term 'accidental means' must be interpreted according to the usage of the average man. So interpreted we have no doubt that the means of death in this case must be designated as accidental. To eliminate from the definition of 'accidental means' all cases where the injury happened as the natural or foreseeable result of a force or event voluntarily set in motion by the insured may have some scientific justification, but is contrary to the common understanding of the term and tends unfairly to limit such policies to cases where the insured is guilty of no negligence."

"Where, however, the death or injury is not the natural or probable result of the insured's voluntary act, or something unforeseen occurs in the doing of the act, the death or injury is held to be within the protection of policies insuring against death or injury from accident or accidental means." 7 A.L.R. 1132.

A case very similar as to the facts, as well as the principle of law involved, is *King v. Travelers Ins. Co.*, 123 Conn. 1; 192 Atl. 311, wherein the court held that evidence that insured dentist acquired ulcers on his index finger by continuous use of X-ray, and that the dentist was thereby prevented from performing some of his daily occupational duties, was sufficient to support a verdict awarding recovery on policies insuring dentist against loss from "bodily in-

jury" through "accidental" means and through "external, violent and accidental means."

A rupture of the ear caused by diving from a plank into 6 or 7 feet of water while bathing was held to be an accident resulting from accidental means. *Rodey v. Travelers Ins. Co.*, 3 N. M. 316, 9 Pac. 348. Death from asphyxia caused by deadly gas in a shallow well into which insured voluntarily descended to fix a pump was held to have been caused by accidental means. *Pickett v. Pacific Mutual Life Ins. Co.*, 144 Pa. St. 79, 22 Atl. 871. Where insured was pulling on a limb of a tree to remove it and fell backwards when it broke, resulting injuries were held to have been caused by accidental means. *Rowden v. Travelers Protective Ass'n*, 201 Ill. App. 295. Where insured was killed while driving an automobile at a high rate of speed, the court held that it was not the law that "if an injury or death is the result of a man's intentional act, it is not an accident," stating that the fact that an intentional act, not *per se* dangerous, and not intended or expected to be attended with injurious results to the actor, may by some unforeseen, unexpected, or unusual contingency become the accidental means of injury to the actor, is too clearly demonstrated by common observation, common experience, and innumerable precedents to justify argument. *Rowe v. United Commercial Travelers Ass'n*, 186 Ia. 454, 172 N. W. 454. These cases support the rule that injuries unintentionally and unexpectedly sustained in the doing of an intentional act are accidents within the ordinary and usual meaning of the term.

There are cases which come to a contrary conclusion and distinguish between accidental result and accidental means in this type of policy. The case of *Landress v. Phoenix Mutual Life Ins. Co.*, 291 U. S. 491, 54 S. Ct. 461, is a leading case that makes this distinction. Many cases supporting both views are annotated in 7 A. L. R. 1132, and 41 A. L. R. 1376. But, after careful consideration, we conclude that the better reasoning is contained in the cases supporting the view expressed herein. The provisions of insurance policies should be considered as used in their ordinary and popular

sense. If this be done, the distinction between accidental result and accidental means cannot be said to exist. It is a distinction without a difference in so far as the average lay person is concerned. The writer of the contract has it within his power by simplicity and clarity of expression to remove all doubt. Courts cannot and ought not permit the insurer to escape liability by a resort to legal adroitness and ingenuity. We conclude, therefore, that a reasonable interpretation of the contract, when applied to the facts in the case at bar, requires a holding that plaintiff suffered an accident within the meaning of the insurance policies.

On February 8, 1936, plaintiff became fully aware that he suffered an injury. The index finger of the left hand cracked open on that date. Certainly, the accident had then occurred. The cumulative effect of the exposures produced a condition described as cancerous. Without the intervention of any external force or disease it progressed until the amputation was necessary. Plaintiff carried on his practice for more than two years thereafter and defendant, as a defense, invokes the language of the policy, to wit, "if such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the insured *from the date of accident.*" In other words, it is contended by defendant that plaintiff literally must have been totally disabled from February 8, 1936, in order to be entitled to insurance benefits. We think that plaintiff was totally disabled from the date of the accident when the controlling clauses of the insurance policies are properly interpreted. In *Rathbun v. Globe Indemnity Co.*, 107 Neb. 18, 184 N. W. 903, this court stated the rule applicable to the case at bar in the following language:

"We think it may be said to be a matter of common knowledge that in a great many, perhaps in a large majority of, instances in which bodily injuries are received, the real nature and extent of said injuries do not reveal themselves until a greater or less time in the future and after the first pains from the hurt shall have passed away. The injured part often lies dormant for an indefinite period, with but

little or no consciousness of its existence by the person injured, although from the very moment of the accident, perhaps, the processes of nature may be busily engaged in developing what may have seemed to be but a slight hurt into a most serious and perhaps fatal injury. In such a case it cannot be said that the injury is not continuous and from the date of the accident, nor can it fairly or justly be said that the disability is not continuous and from date of the accident, because the injured party enjoys a brief respite from pain and suffering, only to be endured to a greater degree when perverted nature again asserts itself. Occurring then under the circumstances stated, to hold that a brief respite from the conscious ill effects of an injury during which respite the insured was able to transact the most, if not all, of his ordinary business should bar recovery, seems to us neither reasonable nor just. It is the undisputed evidence that at the end of two weeks the injury to the insured grew worse and worse until it culminated in his death five months later. All of the medical witnesses testified that the insured died of sarcoma, a malignant disease, and that the disease had its origin in the injury sustained, and that it was a gradual development from the date of injury to the date of death."

In *Thomas v. Mutual Benefit Health & Accident Ass'n,* 136 Kan. 802, 18 Pac. (2d) 151, the court said: "There is some conflict in the authorities on the question, depending to an extent on the terms of the policy. Some do not recognize the so-called 'processes of nature doctrine,' but most of the courts hold that the term 'immediate' as used in such contracts does not mean instantaneously, but that a disability is immediate where it results within the time required by the process of nature for the injury to produce the effect." See, also, *Erickson v. Commercial Travelers,* 103 Kan. 831, 176 Pac. 989. We think the reasoning applied when the word "immediate" was used in the policy has equal force when the words "date of accident" and "within thirty days from date of accident" are employed. The Kansas court in a later case, *Penquite v. General Accident,*

*Fire & Life Assurance Corporation,* 121 Kan. 174, 246 Pac. 498, came to a contrary conclusion and refused to apply the same interpretation and reasoning to the provisions of a policy requiring total disability from date of accident which it employed in deciding a case where immediate total disability was required. After a study of the logic of the cited Kansas cases we accept the reasoning contained in the *Thomas* case and reject as unsound the distinctions attempted in the *Penquite* case.

In *Booth v. United States Fidelity & Guaranty Co.,* 3 N. J. Misc. 735, 130 Atl. 131, the same principle was expressed in the following language: "In view of the nature of the contract and the object sought, it is a fair and reasonable construction to hold that, where the injury is such that the results continue from the date of accident and wholly incapacitate the assured within such time as is required for the processes of nature to bring about such total disability, there is a continuous and total disability from the date of the accident."

We conclude that plaintiff was totally disabled "from date of accident" and "within thirty days from date of accident" within the meaning of the policy as interpreted by the rule announced in the *Rathbun* case and others herein cited.

It is argued, however, that the words "from date of accident" and "within thirty days from date of accident" are so plain and definite that they are not subject to construction. If this be true, then the clauses involved must be ignored under another well-established rule of this court. This court is committed to the rule that, when the strict enforcement of a provision of an insurance policy will result in unreasonable and unjust forfeitures, or an absurd result, the courts will refuse to enforce the strict meaning of the language of the policy. Serious internal injuries often do not develop or manifest themselves until long after the accident happened. The injured person may be completely oblivious of his condition although the processes of nature may be actively engaged in developing the latent hurt into a severe or even fatal injury. The fact that the insured

under such circumstances pursued his usual occupation and performed some or even all of his occupational duties ought not in all fairness militate against him when the more serious but hidden injury subsequently manifests itself. The strict interpretation of such a clause would lead to an unjust result in many such cases so contrary to the general understanding of its ordinary lay meaning that the weight of authority is toward the so-called process of nature rule; that is, that when a disability follows an accidental injury within such time as the processes of nature require to totally incapacitate the injured person, such disability is immediate and, in law, begins on the date of the accident. As was said in *McCleneghan v. London Guarantee & Accident Co.*, 132 Neb. 131, 271 N. W. 276: "Accident insurance is not a method of procuring premiums conditioned on unreasonable phrases preventing recovery for accidental injuries. There should be honesty and fair dealing on both sides."

Defendant further contends that total disability was not established. The policies define the term total disability as injuries which shall wholly and continuously disable and prevent the insured from attending to any and every kind of duty pertaining to his occupation. The evidence is clear that as a result of the accident plaintiff was totally disabled from carrying on his profession as a dentist on and after November 15, 1938. From and after that date plaintiff's left hand could not be used in his work and he was actually compelled to desist his work. The progressive condition of the hand thereafter, cancerous in its nature, was such that additional proof is hardly necessary to establish that plaintiff could not use it in working in the mouths of his patients. There is much evidence in the record of his inability to do his work after that date which requires no recitation here. Under the decisions of this court, there can be no question that plaintiff was totally disabled and suffered loss of time within the meaning of the policies after November 15, 1938. See *Rathbun v. Globe Indemnity Co.*, 107 Neb. 18, 184 N. W. 903; *Woods v. Central States Life Ins. Co.*, 132 Neb. 261, 271 N. W. 850; *McCleneghan v. London Guarantee & Accident Co.*, 132 Neb. 131, 271 N. W. 276.

We are of the opinion that the plaintiff, and not the defendant, was entitled to judgment when both parties moved for a directed verdict at the close of all the evidence. The judgment of the district court is reversed and the cause remanded, with directions to sustain the motion of the plaintiff for a directed verdict and to enter judgment for plaintiff in accordance with the views expressed herein.

REVERSED.

TEWELL, District Judge, dissenting.

I find myself unable to agree with the majority opinion in this case, and feel it my duty to express briefly some of the reasons why. I shall discuss only two of such reasons, and express a query as to a third.

From the facts stated in the majority opinion, it will be noted that the X-ray was applied to the plaintiff's hand exactly in the manner, at the times, and in the exact dosage intended and designed by him, and that no mishap, not intended by him, occurred in any of the various applications. The evidence shows that repeated exposure to X-ray, without a sufficient length of time between exposures to allow the power of all prior exposures to be abated, causes the power of the X-ray to accumulate, until the total unabated power of the various exposures to destroy tissue becomes equal to that of such a prolonged single exposure as would cause such total accumulation of unabated power at one time. The plaintiff had used an X-ray for many years prior to 1936. He knew of its capacity to thusly accumulate such power. It is conceded that no one application of X-ray made by plaintiff would injure any one. The result without doubt was not intended. The majority opinion holds that under such a state of facts the injury to plaintiff's hand was caused by accidental means. To this I cannot agree. The injury cannot be said to have been unusual, or even to have been unexpected on the part of the plaintiff, if by "unexpected" we mean that it was a surprise to him. With both of the two statements expressed in paragraph 3 of the syllabus of the majority opinion I agree. However, I am sure that the ordinary lay person thinks of some force having been

unintentionally and undesignedly applied, whenever he hears that his friend was injured by accidental means, or even by accident. If one intentionally and knowingly comes into contact with the live germs of smallpox, and thusly contracts the disease, it is not ordinarily thought by any one that such disease was caused by accidental means, even though its victim felt sure he would escape it, as many times he might. The quotations given in the majority opinion from *Western Commercial Travelers Ass'n v. Smith,* 85 Fed. 401, and *United States Mutual Accident Ass'n v. Barry,* 131 U. S. 100, 9 S. Ct. 755, cited therein, quite well define the phrase "accidental means." They state, in effect, that for an injury to be caused by accidental means, the force that caused it must either (1) have been applied other than as intended by the person injured, or (2) that the injury must be such an unnatural, or rare, or unexpected consequence of an intended act as to prevent it from being a result that would reasonably be anticipated. All cases cited in the majority opinion as supporting the view therein expressed upon a factual basis can logically be explained, even though one restricts the meaning of accidental means to that of a force applied other than as intended by the person injured, without the addition of the balance of the definition above given. The opinion in *Bennett v. Travelers Protective Ass'n,* 123 Neb. 31, 241 N. W. 781, not cited in the majority opinion, likewise can be so explained. Cases arising under the workmen's compensation act, where only a definition of the word "accident" is involved, and then only as used in that act, are not in point. The majority opinion mentions two views as to the meaning of the phrase "accidental means," and cites cases purporting to support each view. If there are two views, the difference between them comes more from a wrong application of the facts to an attempted statement of the rule, than from any real difference. Be that as it may, it appears very clearly to me that the facts in this case do not bring it under either of such views. The X-ray was applied exactly as intended, and the result, to plaintiff's knowledge, was all but sure to

follow. The result was not accidental. The means were not accidental. It is conceded that negligence on the part of assured is no defense to an action upon a policy such as either of these involved. It should be conceded that neither of the policies involved insures against loss from an occupational disease.

Secondly, the majority opinion directs rendition of judgment for the plaintiff without further trial. Both policies had lapsed for nonpayment of premium by the end of November, 1936. The accident is alleged to have occurred on February 8, 1936, that being when an injury was first noticed. The plaintiff practiced his profession daily until in October, 1938, when he took a trip to South America, intending to continue such practice upon his return. The operation upon his hand was performed on his way home from South America. From the record it is quite evident that neither the plaintiff nor the defendant made any issue of the extent to which the plaintiff's fingers were exposed, if at all, to the X-ray subsequent to the lapse of both policies. No evidence was introduced by the defendant. Certainly the record does not show that the plaintiff's fingers were not exposed to the X-ray after the lapse of both policies. The burden of proof was upon the plaintiff. May not a large portion of the cause of the plaintiff's injury have occurred after the lapse of both policies? The record does not answer this question. The record does show that the plaintiff used the X-ray for nearly two years after both policies had lapsed, but does not show to what extent, if at all, his fingers were exposed to its rays. Both policies involved contain provisions for payments for partial disability. It should either be held that the general finding of the trial court in favor of the defendant included a finding that the cause of the plaintiff's injury occurred after the lapse of both policies, or the defendant should be permitted to introduce evidence upon such issue.

Thirdly, if what is designated as the process of nature rule is to be held to have been within the contemplation of the parties, when the words "within thirty days from date

of accident" were inserted in one of these policies, and the words "from the date of accident" were inserted in the other by the plaintiff and defendant, surely such contemplation must be held to have extended only to cases in which the cause of disability was clear, and was complete while the policy was in force. If such process of nature rule is to be adopted, then should not the holding in *Shambaugh v. Great Northern Life Ins. Co.*, 131 Neb. 415, 268 N. W. 288, be overruled?

The more nearly words and phrases in an insurance contract that are allowable and not ambiguous are given their usual and also a definite meaning, and such meaning aptly and accurately applied to the facts of a case in which they are involved, the less damage will the great masses of the insuring public suffer. Any other course tends toward trickery on the part of the insurer, and fraudulent claims on the part of the insured, either of which in the end only damages the insuring public, and makes government by rule more difficult to maintain. Any other course tends toward still more restrictive words and phrases, toward a rise in rates to meet uncertainties, and toward increased litigation. Perhaps a statutory restriction against any policy of insurance against loss by accident, other than prescribed forms, sufficient in number and variety to meet public needs, would be of great service to the insuring public. I feel that the judgment of the trial court should be affirmed.