GENERAL AMERICAN LIFE INS. CO. v. LANKFORD.

No. 34278. Sept. 30, 1952.

Rehearing Denied Oct. 21, 1952.

*249 P. 2d 91.*

Earl Q. Gray and John M. Poindexter, Ardmore, for plaintiff in error.

Williams & Williams, Ardmore, for defendant in error.

DAVISON, J. This is an action against the General American Life Insurance Company, a corporation, defendant, wherein Bula Lankford, plaintiff, seeks to recover, as beneficiary, under a double indemnity provision of a life insurance policy, for the alleged accidental death of her husband, Steve L. Lankford, the insured thereunder. The parties will be referred to as they appeared in the trial court.

On the morning of May 23, 1946, Steve L. Lankford left home for the purpose of attending a union meeting and with the intent of going squirrel hunting later in the day. Some time during the day, his wife, the plaintiff herein, went over to the home of her sister, Mamie Ingram. Late in the afternoon, near sundown, plaintiff, her sister, Mamie Ingram, another sister, Lola Stinnett, and a nephew, Grady Rone, were at the home of the said Mamie Ingram when, without knocking, the said Steve L. Lankford entered the house in a drunken, vile and belligerent condition. He asked plaintiff what she was doing and slapped her. One of her sisters started to explain and he knocked her down. Then the other sister, Mamie Ingram, grabbed a pistol which the nephew had in his hand and shot and killed the insured.

At the time of his death there was in full force and effect a $1,000 insurance policy on the life of the said Steve L. Lankford, wherein the plaintiff herein was beneficiary. The said policy also provided that, "The Company will pay double the face amount of this policy in lieu of the death settlement above provided, if death is accidental as defined in the conditions hereinafter stated."

Subsequent to her husband's death, plaintiff, who was in bad health, went to Sulphur, Oklahoma, to take the baths and was accompanied there by one of her sisters. While in Sulphur, one of the representatives of the defendant contacted her and secured a compromise and settlement of the death claim from plaintiff. She was paid $1,100 which included $100 as payment for the double indemnity claimed under the above-quoted provision. Later, on April 4, 1947, she filed this suit wherein she tendered the $100 paid to her and sought recovery of $1,000 for the alleged accidental death of her husband under the provisions of said life insurance contract. In addition to alleging a compromise and settlement of the claim in good faith and denying that decedent's death was accidental within the meaning of the contract, the defendant relied mainly upon avoidance of liability under the terms of the following provisions contained in the policy, to-wit:

"The Double Indemnity payable in event of the accidental death of the insured shall be due if * * * death result independently and exclusively of all other causes from bodily injuries effected directly from external, violent and accidental means, within ninety days from the happening of such injuries, of which, other than in the case of drowning, there shall be visible contusion or wound on the exterior of the body, except that this Double Indemnity will not be payable if the insured's death shall result * * * directly or indirectly, wholly or in part, from poisoning, infection, or any kind of illness or disease, or from any violation of law by the insured. * * *"

A jury was waived and the case was tried to the court, resulting in a judgment for plaintiff. From such judgment, defendant has perfected this appeal. This court has not heretofore had before it the question of the effect of death of the insured occurring under circumstances such as in the case at bar.

In the case of Mid-Continent Life Ins. Co. v. Dunnington, 177 Okla. 484, 60 P. 2d 1047, this same defense was interposed in an action on an accident policy. However, it was there held that the insured was not violating the law when injured. Hence, the effect of the injury occurring while insured is engaged in such violation was not discussed. In the case of Union Accident Co. v. Willis, 44 Okla. 578, 145 P. 812, L.R.A. 1915D, 358, the insured was struck in the face by another, which blow knocked him to the sidewalk. He struck and fractured his skull on the pavement. The question there involved was whether his death resulted from the intentional act of another. In the case of Mid Continent Life Ins. Co. v. Davis, 174 Okla. 262, 51 P. 2d 319, insured, about to be arrested by officers for disturbing the peace, jumped out of a window in an apartment house, striking a metal awning and then the ground. The defense was that the death was the result of an intentional act of deceased and therefore not accidental. In neither of these last-cited cases was it contended that death occurred while insured was engaged in a violation of the law. Other cases, relied upon by plaintiff to sustain the judgment of the trial court, are even more easily distinguishable from the fact situation here involved.

In summarizing the decisions dealing with situations similar to that in the case at bar, it is stated in 166 A.L.R. 1163, that:

" * * * the rule which is supported by nearly all the decisions seems to be that where the insured was the aggressor, no recovery can be had under a policy containing a 'violation of law' clause for his death occurring while the fight is on, even though his killing was unjustifiable under the circumstances. * * *"

One of the cases cited in support of that rule is Bloom v. Franklin Life Ins. Co., 97 Ind. 478, 49 Am. Rep. 469. Therein, the insured made an assault upon his brother's wife and while choking, beating and bruising her, his brother hit him in the head with a jack plane in an attempt to stop and pre-

vent the assault and battery. The blow fractured insured's skull, causing his death within a few hours.

In the body of the opinion, the court said:

"The act of the assured in this case was the proximate cause of his death within the meaning of the law. A man who makes a violent assault upon a woman puts his own person in danger, for a father, a husband, or a child may interfere to protect the assailed woman, and may overcome the assailant by force. Strangers not only may interfere to protect the person violently assaulted, but are, in strict law, under a duty to interfere. The natural result of such an illegal act as that of the assured, therefore, was to bring his person into danger, and as death resulted his own act was the proximate cause."

The insurance policy sued upon in the case of Gresham v. Equitable Life & Acc. Ins. Co., 87 Ga. 497, 13 S.E. 752, contained a provision excepting the insurer from liability for accidental injuries caused by dueling, fighting, wrestling, etc. Insured engaged in an argument with another, which led to a fist fight which culminated in the other person shooting and killing him. The insurer defended the action upon the ground that the death was within the exception and that there was no liability. In sustaining this defense the court said:

" * * * The shooting is accounted for easily and naturally by ascribing it to the fight. This is the proper explanation of it, whether it be regarded as a part of the fight proper or as a sequel to it. It was certainly embraced within the res gestae of the combat. It took place on the same stage and within the atmosphere of the antecedent performance. The homicide could well be treated as the culmination of the final scene, —the catastrophe of the drama. At the very least it was a bloody epilogue, and not an independent after-piece. Nor is it material that it was not down on the bill, but was wholly unexpected by one or both of the actors. Rarely, if ever, can the incidents or the result of a personal encounter be foreseen. A deadly weapon may make its appearance at the last moment, and a homicide be the result, although the fight intended and begun was one with 'fist' and 'scull' only. * * *"

In the case at bar, there is no conflict in the testimony. The deceased was violating the law by committing an assault and battery upon his wife and her sisters and had knocked one of them down. He was shot and killed while so violating the law and in an attempt to stop him. It is probable that he could have been stopped without the use of such extreme measures but that is not the question. The point to be determined is, Did his death "result * * * directly or indirectly, wholly or in part, * * * from any violation of the law by insured" as provided in the insurance contract? We conclude that it did.

The case of Landry v. Independent Nat. Life Ins. Co., 17 La. App. 10, 135 So. 110, involved a somewhat similar provision which was relied upon as a defense to liability for death of insured who met death while engaged as a dealer in a poker game. He had put one of the players out of the game for cheating. The ousted player returned in a short time and shot him. The court followed the reasoning in the case of Bloom v. Franklin Life Ins. Co., supra, and denied recovery. The opinion contains the following citation from the case of Murray v. New York Life Ins. Co., 96 N.Y. 614, 48 Am. Rep. 658, which is a sound rule in such cases:

"To exempt the c o m p a n y, must the death result from some peculiar and special risk connected with the commission of crime? It seems to us not, and that it is sufficient to bring a case within the condition, if there is such a relation between the act and the death that the latter would not have occurred at the time if the deceased had not been engaged in the violation of law."

The only conclusion that can be reached in the instant case is that insured met his death while violating the law; that such violation caused him to

be shot and that the shot caused his death. Under such circumstances, the defendant was exempt from liability by the terms of the policy relating to the double indemnity. Having reached this conclusion it is unnecessary to consider the other matters of defense presented.

The judgment is reversed, with directions to enter judgment for defendant.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, JOHNSON, and O'NEAL, JJ., concur. ARNOLD, C.J., and BINGAMAN, J., dissent.