# GORDON *v.* METROPOLITAN LIFE INSURANCE COMPANY

[No. 126, September Term, 1969.]

*Decided January 6, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SMITH and DIGGES, JJ.

*Paul R. Rochlin,* with whom were *Rochlin & Settleman* on the brief, for appellant.

*Thomas Waxter, Jr.,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This case involves an appeal from the "Serbonian Bog," that morass of facts and legal distinctions involved in determining whether a death occurred "solely through violent, external and accidental means," or was merely accidental in result. The appellant's husband, Norton Gordon, died after a self-administered and illegal injection of heroin. There was no contention that any mishap occurred during the actual act of injection of the drug. He had a history of narcotics addiction and the medical examiner, Dr. Breitenecker, indicated that death could have resulted from the heroin alone, either by hypersensitivity to the drug itself or a reaction to impurities frequently found in illicit drugs. He was of the opinion, however, that the more logical explanation for the death was to be found in the combined effect of the heroin with another drug found in the decedent's system. This latter drug was Doriden, a sedative or pain killer which was found in his blood in a 2.04 milligrams per cent concentration, not a lethal dose, but a higher than normal one. The doctor also pointed out that the heroin was not present in lethal quantities either, although he admitted because of the chemical breakdown

of heroin in the body, he could not determine how large a quantity of heroin was initially taken. Dr. Breitenecker further noted that narcotics users were aware of the substantial risk involved in the self-administration of heroin. He could not comment, however, on the degree of knowledge of the risk involved in combining heroin with Doriden. No explanation was offered as to how or why or under what circumstances the decedent was using Doriden, except that there were no apparent bodily injuries which would have justified its use as a pain killer.

Construing this evidence in the light most favorable to the appellant, it appears that under either explanation a self-administered dose of heroin was a prime cause of the death in question, acting either by itself or in combination with the Doriden. The possibility that the decedent may have been unaware of the risk in combining drugs becomes irrelevant when one of the drugs used, heroin, by itself carries with it a well known and substantial risk.

After paying normal death benefits of $4,000, the appellee Metropolitan Life Insurance Company refused to honor the double indemnity provision of the insurance contract,[1] asserting that this death was not sustained

---

1. "Section A.
    Benefit Provisions
    If, while insured under the Group Policy for Insurance for Death or Dismemberment by Accidental Means, the Employee sustains bodily injuries solely through violent, external and accidental means, and within ninety days thereafter suffers any of the losses specified in Section C hereof as a direct result of such bodily injuries independently of all other causes, the Insurance Company shall pay the amount of insurance specified for such loss in Section C hereof, provided, however, that in no case shall any payment be made for death or any other loss which is:
    (A) caused wholly or partly, directly or indirectly, by disease or bodily or mental infirmity or by medical or surgical treatment or diagnosis thereof, or
    (B) caused wholly or partly, directly or indirectly, by ptomaine or by bacterial infection, except only septic infection of and through a visible wound sustained

"solely through violent, external and accidental means," although it was conceded that this death was accidental in result. The trial court agreed with this contention on the basis of *Life Insurance Co. v. Plummer,* 181 Md. 140, 28 A. 2d 856, and further ruled in directing a verdict in favor of the insurance company that where death results from an illegal act such as this, recovery should be denied as a matter of public policy.

Appellant urges that we should overrule our previous decision in *Plummer,* and follow a number of jurisdictions which have declined to make the distinction between accidental means and accidental results. See *Beckham v. Travelers Insurance Company,* 424 Pa. 107, 225 A. 2d 532 (1967), and cases collected in Annot. 52 A.L.R.2d 1083 (1957) and later case service. For an extensive discussion of the entire problem see *Linden Motor Freight Co., Inc. v. Travelers Ins. Co.,* 40 N.J. 511, 193 A. 2d 217 (1963). This we decline to do. In *Plummer,* 181 Md. at 143, a case which involved an unexpected reaction to a normally administered anesthetic, it was emphatically stated:

> "We adopt the majority view that a means is not made accidental, within the terms of a policy providing for double indemnity in case of death resulting from bodily injury caused solely by external, violent and accidental means, merely because death results unexpectedly, where the means consists of a voluntary and intentional act occurring in the usual manner."

*Home, Etc. Company v. Partain,* 205 Md. 60, 106 A. 2d 79 (1954), involved construction of the same policy

---

solely through violent, external and accidental means, or

(C) caused wholly or partly, directly or indirectly, by hernia, no matter how or when sustained, or

(D) caused directly or indirectly by insurrection, war or any act of war, or

(E) caused by or resulting from intentional self-destruction or intentionally self-inflicted injury, while sane or insane."

language as that found in *Plummer*, and we upheld without question the distinction developed in *Plummer*. In *Haynes v. Am. Cas. Co.*, 228 Md. 394, 399-400, 179 A. 2d 900 (1962), we were of the opinion that the particular wording of the insurance contract in that case did not warrant our "attempting a sweeping determination as to whether or not a valid distinction exists between 'accidental means' and 'accidental result' in *all cases.*" See also *Harleysville v. Harris & Brooks*, 248 Md. 148, 235 A. 2d 556 (1967).

This case on its facts does not warrant such a sweeping determination either. When a man injects himself with a dangerous drug and no mishap occurs in the injection, though an unexpected result occurs, there is no reason to obliterate the distinction between means and results to insure that he can recover a double indemnity benefit. Perhaps in some cases there is no way to distinguish, but here with an intentional illegal act involving serious foreseeable risk, we are presented with cumulating evidence that this is not the type of hazard against which this policy provides.

"Obviously the purpose of accident insurance is to protect the insured against accidents that occur while he is pursuing his business or pleasure, in the usual way, without any thought of being injured or killed, and when there is no probability, in the ordinary course of events, that he will suffer injury or death." *Metropolitan Life Ins. Co. v. Neikirk*, 175 Md. 163, 172, 200 A. 370, 374 (1938).

In *Partain*, 205 Md. at pages 67-69, we focused upon the foreseeability of risk involved in the means employed. There, the insured provoked a fight during which his victim pushed him away, causing him to fall and suffer a fatal concussion. We found on those facts, less compelling than the facts in the instant case, that death was not an unreasonable possibility in such a situation. Here, with the use of an illegal drug without medical authorization or supervision, a drug with well known poten-

tial for injury, we are hard pressed to say that a great amount of risk was not assumed, or was unforeseeable.

Justice Cardozo, in his famous dissent in *Landress v. Phoenix Mutual Life Insurance Co.*, 291 U. S. 491, 54 S. Ct. 461, 78 L. Ed. 934 (1934), observed that "The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog." [2] Justice Cardozo, invoking a rule of judicial convenience, would have us ignore the plain terms of the contract on the ground that it is impossible to split hairs so finely in many cases. In spite of this reasoning, which is most attractive to any judge or lawyer who must steep himself in hundreds of cases to comprehend the confusion that reigns in this field, it is still necessary to analyze some of the components of this "Serbonian Bog."

The main component of the bog is a wide variety of facts in a context even broader than the fact-smothered field of negligence law. The second component of the bog is contract language, which can vary with the imagination of insurance company legal staffs. The third feature is a noticeable lack of any legal standards to determine when an accident has occurred under the facts and the terms of the contract. The "Serbonian Bog" is not the distinction between means and results; it is rather the entire field of accident law. As long as we cannot control historical facts or ignore the language of contracts, we will be forced to slosh through the bog. The necessity of that march will not be avoided by saying, as Justice Cardozo would have us do, that one word, "means," is equivalent to another, "cause." *Cf., Linden Motor Freight Co., Inc. v. Travelers Ins. Co.*, 40 N.J. 511, 193 A. 2d 217, 223-24 (1963).

The language of this contract and the precise facts of

---

2. The reference quoted in *Haynes v. Am. Cas. Co.*, 228 Md. 394, 399, n. 1 (1962) is from Milton's *Paradise Lost*, Book 2, Line 592:
"A gulf profound as that Serbonian Bog
Betwixt Damiata and mount Casius old,
Where Armies whole have sunk * * *."

this case present a reasonably clear distinction between nonaccidental means and accidental results. As we have held previously in *Plummer,* 181 Md. at 142-43, and in *Partain,* 205 Md. at 66, the distinction between accidental means and accidental results has been recognized and applied. On the face of this contract there is no ambiguity, and as it is applied to these facts there are ample grounds to compel the distinction. Perhaps in many cases this distinction between means and results will be too fine, too nebulous, and too locked into a unique factual pattern to warrant any other course of action than submitting the question to the jury. This simply is not one of those cases. The learned trial judge was correct in directing a verdict in favor of the insurance company.

*Judgment affirmed. Costs to be paid by appellant.*