FRANK CATANIA, Appellant, v. STATE FARM LIFE INSURANCE COMPANY, INCORPORATED, an Illinois Corporation, Respondent.

No. 9743

August 16, 1979                    598 P.2d 631

*Wiener, Goldwater & Waldman,* and *Gerald M. Gordon,* Las Vegas, for Appellant.

*Rose, Edwards, Hunt & Pearson,* Las Vegas, for Respondent.

## OPINION

By the Court, Gunderson, J.:

Respondent State Farm issued a $10,000 life insurance policy, insuring the life of Marc Catania, which included an

"Accidental Death Section." With the policy in full force and effect, Marc Catania apparently regurgitated and choked to death, a result of "acute narcotism" occasioned by a self-administered heroin injection. State Farm tendered a check to Frank Catania, Marc's father and beneficiary, for $10,361.03 in full settlement of the life portion of the policy. However, State Farm refused payment of any accidental death benefits, and thereupon Frank Catania brought this action for $10,000, allegedly due under the policy's "Accidental Death Section."

The "Accidental Death Section" provides for double recovery if the death of the insured "resulted directly, and independently of all other causes, from bodily injury effected solely through external, violent, and accidental means. . . ." The same section excludes coverage for "death resulting directly or indirectly from (1) suicide or intentional self-inflicted injury of any kind, whether the insured be sane or insane; . . . (3) bodily or mental infirmity or illness or disease of any kind . . ."

In a motion for summary judgment, respondent State Farm claimed: (1) that since the insured intended to inject the heroin, his death was not the result of an accidental "means," even if he did not intend or expect to die therefrom; (2) that the death resulted from a self-inflicted injury or a disease, and, as such, was specifically excluded from coverage; and (3) that in any event the death was not accidental. The district court granted State Farm's motion for summary judgment.[1] Catania appeals, claiming the district court erred in granting State Farm's motion for summary judgment. We agree.

1. A growing number of jurisdictions have refused to recognize the technical distinction between "accidental death" and death by "accidental means," or between "accidental means" and "accidental result." INA Life Insurance Company v. Brundin, 533 P.2d 236 (Alaska 1975); Gulf Life Insurance Company v. Nash, 97 So.2d 4 (Fla. 1957); Scott v. New Empire Insurance Company, 400 P.2d 953 (N.M. 1965); Beckham v. Travelers Insurance Company, 225 A.2d 532 (Pa. 1967); Burr v. Commercial Travelers Mut. Acc. Ass'n., 67 N.E.2d 248 (N.Y.App. 1946). The rationale of these cases is to apply the controlling policy language as the average person would understand it. INA Life Insurance Company v. Brundin, *supra*. As explained by the Arizona Supreme Court:

> One paying the premium for a policy which insures against "death by accidental means" intends to provide benefits to his family or named beneficiary in the event he

---

[1] Appellant Catania also made a motion for summary judgment, which the court denied.

should suffer death *caused by accident* as opposed to death caused by other means, such as suicide, murder, disease or natural death. He intends to insure against the fortuitous, the unintentional, and the unexpected, that which happens through mishap, mischance or misjudgment. When he pays that premium month after month he does not intend that any act committed by him, no matter how daring, reckless or foolhardy, be adjudged by a court under "reasonable man tests" or "natural and probable consequence" standards to deprive his beneficiary of contractual rights arising out of his unintended and unexpected and, therefore, accidental death.

The term "accidental means" as used in this policy should not be construed in a technical sense but should be given its ordinary and popular meaning according to common speech and usage and the understanding of the average man. . . . Insurance policies upon which the public relies for security in case of accident should be free from fine distinctions which few can understand until pointed out by lawyers and judges. . . .(Emphasis in original.)

Knight v. Metropolitan Life Insurance Company, 437 P.2d 416, 420 (Ariz. 1968).

A distinction between "accidental means" and "accidental results" is certainly not understood by the average person, for whom accident policies are written. Burr v. Commercial Travelers Mut. Acc. Ass'n., *supra.*

The line of authority referred to above is consistent with the principles long recognized by this court, i.e. that insurance clauses should be taken and understood in their plain, ordinary and popular sense, Home Indem. Co. v. Desert Palace, Inc., 86 Nev. 234, 468 P.2d 19 (1970); Richfield Oil Corp. v. Harbor Ins. Co., 85 Nev. 185, 452 P.2d 462 (1969), and that ambiguous insurance policy provisions will be strictly construed against the insurer and in favor of the insured. Home Indem. Co. v. Desert Palace, Inc., *supra;* Smith v. N.A.A.I. Co., 46 Nev. 30, 205 P. 801 (1922); Gerhauser v. N.B. & M. Ins. Co., 7 Nev. 174 (1871).

We therefore hold that where an insured dies as the result of an *intentional or expected act* or event, but did not intend or expect death to result, the death is "accidental" within the contemplation of that term, as utilized in a policy such as the one

before us. *See* Knight v. Metropolitan Life Insurance Company, *supra;* Miller v. Continental Ins. Co., 358 N.E.2d 258 (N.Y.App. 1976).

2. Applying the same principle of construction to the policy's exclusion clause, we are constrained to reject respondent's contention that, as a matter of law, Marc Catania's injection of heroin constituted a "self-inflicted injury" or "disease" as those terms are commonly used. *See* Minton v. Stuyvesant Life Insurance Company, 373 F.Supp. 33 (D.Nev. 1974). *See also* Miller v. Continental Ins. Co., *supra.*

3. Whether Marc Catania's death was expected or intended, and therefore not accidental, is a question to be determined by the trier of fact. Since this material issue of fact exists, the order granting summary judgment is reversed, and the cause is remanded for trial.

MOWBRAY, C. J., and THOMPSON, J., concur.

BATJER, J. dissenting:

I respectfully dissent from the holding of the majority. The insurance policy being considered does not cover or insure against a fatality caused by an intentional self-inflicted injury of any kind.

Here the injection of the heroin by Marc Catania was a bodily injury inflicted upon himself. The piercing of his body with the needle was intentional and not accidental. The resulting death was an ever present reality that should have been expected and foreseen.

In Gordon v. Metropolitan Life Ins. Co., 260 A.2d 338, 340 (Md. 1970), that court said:

> ". . . [w]ith the use of an illegal drug without medical authorization or supervision, a drug with well known potential for injury, we are hard pressed to say that a great amount of risk was not assumed, or was unforeseeable."

*See* Whiteside v. New York Life Ins. Company, 503 P.2d 1107 (Wash.App. 1972).

Furthermore, one of the purposes of the "risks not assumed" clause in the policy is to deny additional benefit for death indirectly caused by an intentional self-inflicted injury of any kind even if a death so caused would be within the coverage of the "benefit" clause. Jackson v. Southland Life Ins. Co., 393 S.W.2d 233 (Ark. 1965); Independent Life and Accident

Ins. Co. v. Causby, 94 S.E.2d 388 (Ga.App. 1956); *Cf.* Knowlton v. John Hancock Mut. Life Ins. Co., 79 A.2d 581 (Me. 1951).

The usual and ordinary definition of accidental does not include intentional bodily injury. Marc Catania's intentional self-injection of heroin was not an accidental bodily injury; therefore, appellant is not entitled to double indemnity benefits. I agree with JUSTICE MANOUKIAN that no excess liability exists in this case and that the judgment of the district court should be affirmed.

MANOUKIAN, J., dissenting:

Respectfully, I dissent. The majority holds that "where an insured dies as the result of an intentional or expected act or event, but did not intend or expect death to result, the death is 'accidental' within the contemplation of that term, as utilized in a policy such as the one before us. [Citations omitted.]"

The double indemnity section of the policy applies if the death of the insured "resulted directly, and independently of all other causes, from bodily injury effected solely through external, violent, and accidental means as evidenced by a visible contusion or wound on the exterior of the body. . . ." The policy does not cover or insure against "death resulting directly or indirectly from (1) suicide or intentional self-inflicted injury of any kind, whether the insured be sane or insane; . . . (3) bodily or mental infirmity or illness or disease of any kind. . . ."

Respondent argues that death in the instant case did not occur through accidental means as required by the policy to trigger the double coverage. Appellant contends that Marc Catania did not intend to take his life, that death was an unexpected result of his self-ingestion of heroin and that no distinction should be made between "accidental means" and "accidental result."

In Gordon v. Metropolitan Life Ins. Co., 260 A.2d 338 (Md.App. 1970), involving a self-administered injection of heroin, the court held that the double indemnity clause for death resulting from violent, external, and accidental means excluded from coverage a situation where an individual dies as a result of a self-administered dose of heroin—an intentional illegal act involving serious foreseeable risk. On the basis of this record and in view of the fact that mere possession of heroin is a felony in this state (NRS 453.336), I would affirm the judgment of the trial court and hold that no excess liability exists in this case. Here, it is undisputed that the decedent had been using

various illegal drugs, including heroin, for a period of approximately three years preceding his death. His girlfriend stated that Marc enjoyed getting "high, whether on liquor, pills, or heroin, whatever it was." Marc had passed out on numerous previous occasions, and rather recently had been hospitalized as a result of an overdose of heroin. During the last three weeks of his life, he had developed a ready supply of heroin, ingesting a quantity two to three times a day. On the date of his death, Thanksgiving Day, 1975, prior to dinner, Marc ingested heroin, various other controlled substances, including tuinol and quaaludes, and had been drinking alcohol. After dinner, Marc and several of his acquaintances, ingested more heroin, with Marc self-administering what he was warned and should have known was unquestionably an excessive quantity. Dr. Sheldon Green, a nationally board certified pathologist, determined the cause of death was acute narcotism, fatal reaction in an addict.

On this record, the decedent's self-ingestion of drugs was tantamount to a suicide, and plainly was not within the reasonable expectations of the insured for coverage. See Whiteside v. N.Y. Life Ins. Co., 503 P.2d 1107 (Wash.App. 1972). With this intentional unlawful act, involving the well-known poisonous nature of heroin and devastating foreseeable danger, coupled with the overwhelming evidence that this is not the type of risk against which this accidental death provision provides coverage, neither public policy or this Court should reward such a flagrant violation of prevailing moral standards or criminal statutes. See General Am. Life Ins. Co. v. Lankford, 249 P.2d 91 (Okla. 1952).

The majority improvidently establishes a dichotomy between "accidental means" and "accidental results." Here there is no ambiguity in the policy. Compare, Travelers Insurance Co. v. Lopez, 93 Nev. 463, 567 P.2d 471 (1977); United Services Auto. Ass'n v. Dokter, 86 Nev. 917, 478 P.2d 583 (1970). The insurer, having used the terms "accidental means," is entitled to rely on the policy provision excluding double indemnity benefits for death resulting from self-inflicted injury. Moreover, where as here, there is no accident in the means, there can be none in the result. See Murphy v. Travelers Ins. Co., 2 N.W.2d 576 (Neb. 1942); Provident Life & Accident Ins. Co. v. Green, 46 P.2d 372 (Okla. 1935). Again, the lethal dosage was well in excess of the amount Marc was in the habit of ingesting, was not inadvertently introduced into his body, cf. Dezell v. Fidelity & Casualty Co., 75 S.W. 1102 (Mo. 1903), nor is there any "indication that some unforeseen or unintended condition or combination of circumstances, external to the state of the victim's body, contributed to the accidental result." Landress v.

Phoenix Mut. Life Ins. Co., 291 U.S. 491, 496–497 (1934). In any event, it is evident that the means used was not accidental, and "it is not enough that the result may be unusual, unexpected, or unforeseen." Jackson v. National Life and Accidental Insurance Co., 202 S.E.2d 711 (Ga.App. 1973). In the context of this case, I would hold that as a matter of law, a distinction does exist between "accidental means" and "accidental results." Since death was not caused by accidental means, I would affirm the summary judgment.