**STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff–Appellee,**

v.

**Ronald SMITH, Defendant,**

**and**

**Toni Delibertis, individually and in her capacity as Guardian of the person Angela Marie Smith; and Angela Marie Smith, Defendants–Appellants.**

**No. 89–15394.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 19, 1990.

Decided July 3, 1990.

See also —— F.Supp. ——.

George W. Foley, Jr., Pearson and Patton, Las Vegas, Nev., for plaintiff-appellee.

J. Randall Jones, argued, Paul A. Lemcke, Jones, Jones, Close & Brown, Las Vegas, Nev., for defendants-appellants.

Before BEEZER and KOZINSKI, Circuit Judges, and STEPHENS,* District Judge.

KOZINSKI, Circuit Judge:

This case presents a question of insurance coverage. Ronald Smith sexually molested his adopted daughter on several occasions. While he admits these acts were intentional, he denies any intent to harm his daughter. He was, he says, trying to do her a favor. The question is whether, in a subsequent civil lawsuit brought by his daughter and her mother to recover for emotional and psychological damage, Smith can force his liability insurance carrier to defend the lawsuit and pay the judgment, or whether the claims are excluded from coverage as "bodily injury ... which is either expected or intended by an insured."

## Facts

The relevant facts are not in dispute. Ronald Smith is the adoptive father of Angela Marie Smith. Smith was divorced from Toni Delibertis, Angela's mother, in 1985. Angela was in Smith's care in June and July of 1987, during which time Smith committed a series of sexual molestations upon Angela, who was then eleven years old. Smith confessed to police in Las Vegas, acknowledging that his acts were against the law and morally wrong. He insisted, though, that he never intended to harm Angela. He explained that she had expressed a growing interest in boys, he was concerned that she was not ready and wanted to teach her what she needed to know as she matured sexually and began dating. *See* CR 6, Ex. B at 5, 12, 21. Smith subsequently pled guilty to attempted sexual assault.

In February 1988, Angela and her mother filed a complaint in Nevada state court, seeking damages for emotional and psychological harm to them both. The complaint characterized Smith's conduct as "negligent" and "grossly negligent," but not as intentional or malicious. CR 1, Ex. 1 at 3. Smith tendered his defense to State Farm Fire and Casualty Company under his homeowners policy; State Farm accepted the tender pursuant to a reservation of rights to contest coverage. On September 7, 1988, the state court granted Angela and Delibertis's motion for summary judgment on the negligence issue; no judgment has yet been rendered as to damages.

A month later, State Farm filed a complaint for declaratory relief in federal district court, alleging that the claims against Smith were excluded from coverage. The district court agreed and granted State Farm's motion for summary judgment. We review de novo.

## Discussion

Under the heading "Exclusions," the State Farm policy expressly provides that its personal liability coverage does not extend to:

a. **bodily injury** or **property damage:**
(1) which is either expected or intended by an **insured**....

CR 1, Ex. 2 at 13 (emphasis original).[1] Angela and Delibertis contend that this ex-

---

* The Honorable Albert L. Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

1. In its complaint for declaratory relief, State Farm pointed to several other policy provisions, any one of which might have afforded a sufficient basis for denying coverage. For example, the policy limits coverage to injuries caused by "an accident," CR 1, Ex. 2 at 2, 12; excludes coverage for any injury "which is the result of willful and malicious acts of an **insured**," *id.* at 13 (emphasis original); and contains a broad family exclusion, refusing to cover any claim brought by a relative of the named insured who resides in the same household. *Id.* at 1, 14. As we uphold the district court's grant of summary

clusion does not apply to their claims because, while Smith intended to perform the acts of molestation, he neither "expected" nor "intended" to harm Angela in doing so. They point out that ambiguities in insurance policies are construed against the insurer, and argue that to qualify for the exclusion, Smith must have intended not only the acts of molestation, but also the harm that resulted.

They claim to find support for their position in *Catania v. State Farm Life Ins. Co.*, 95 Nev. 532, 598 P.2d 631 (1979). In *Catania*, a life insurance policyholder had died as a result of a self-administered heroin injection. When the beneficiary, Catania's father, sought double recovery under the Accidental Death section of the policy, State Farm refused, pointing to two policy provisions: one required that the death result from "accidental means"; the other ruled out double recovery for death resulting from "intentional self-inflicted injury." 598 P.2d at 632. As Catania had injected the heroin intentionally, the insurance company determined that his father's claim failed under both provisions. *Id.* The trial court agreed with State Farm and granted summary judgment, but the Nevada Supreme Court reversed.

As to the "accidental means" requirement, the supreme court explained that, to the average person, this meant the same thing as "accidental death." Thus, "where an insured dies as the result of an intentional or expected act or event, but did not intend or expect death to result, the death is 'accidental' within the contemplation of that term, as utilized in a policy such as the one before us." *Id.* at 633. Similarly, the court held that summary judgment was improper under the other clause; although the heroin injection was intentional, it was unclear whether Catania's subsequent death qualified as an "intentional self-inflicted injury." *Id.*

Angela and Delibertis correctly point out that, as a federal court sitting in diversity, we are bound to apply state law. As there are no Nevada cases construing the exclu-

sionary language at issue here, we must use our best judgment in predicting how the state's highest court would decide the issue. *See Air–Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 186 (9th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 868, 107 L.Ed.2d 952 (1990). Angela and Delibertis suggest that *Catania* offers a strong clue as to what the Nevada Supreme Court would do; they urge us to read the decision broadly, as standing for the proposition that exclusionary language referring to intent necessarily means subjective, not objective, intent. Because there was evidence that Smith did not subjectively intend to harm Angela, they argue, summary judgment was inappropriate. Confident that the Nevada Supreme Court would not read *Catania* so broadly, we reject this argument.

There is a crucial distinction between *Catania* and this case. The policyholder in *Catania* injected heroin; a dangerous and unwise act to be sure, but not one that normally—far less, inevitably—results in immediate death. Thus, the Nevada Supreme Court, while recognizing that the injection itself was deliberate, chose to characterize the death caused by the injection as the result of "mishap, mischance or misjudgment." 598 P.2d at 632 (internal quotations omitted). Ronald Smith, on the other hand, molested his eleven-year old daughter. This is not the kind of act which results in emotional and psychological harm only occasionally; Nevada law conclusively presumes that such conduct will be harmful in every case and therefore makes it illegal. Nev.Rev.Stat. § 201.230 (1989) (lewd acts with children under fourteen years of age). Consequently, under the law of the state, one cannot intend the act of molestation without also intending the harm. The logic of *Catania* has no application where the injury for which recovery is sought flows from the intended act as a matter of law.

This is precisely what the district court held in its well-reasoned opinion, noting that "the vast majority of jurisdictions that have considered this issue have concluded

---

judgment based on the "expected or intended" exclusion, we do not address these other poten-

tial grounds for relief.

that intent to harm may be inferred from sexual contact with a minor as a matter of law, irrespective of the intent of the insured." CR 21 at 5. *See, e.g., State Farm Fire and Casualty Co. v. Abraio*, 874 F.2d 619, 621–23 (9th Cir.1989) (California law); *Fire Ins. Exchange v. Abbott*, 204 Cal. App.3d 1012, 1023–24, 251 Cal.Rptr. 620 (1988); *Rodriguez v. Williams*, 107 Wash.2d 381, 729 P.2d 627, 630–31 (1986); *Vermont Mutual Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800, 802–03 (1986); *Illinois Farmers Ins. Co. v. Judith G.*, 379 N.W.2d 638, 641–42 (Minn.App.1986); *Linebaugh v. Berdish*, 144 Mich.App. 750, 376 N.W.2d 400, 405 (1985); *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689, 691 (1984). We believe the Nevada Supreme Court would reach the same conclusion.[2]

### Conclusion

Accordingly, the injury claims made against Smith are not covered under his homeowners policy. The district court's grant of summary judgment in favor of State Farm is affirmed.

---

**2.** While we afford no special deference to the decisions of federal district courts construing the law of the state in which they sit, we take some comfort from the fact that at least one district court in Nevada has reached precisely the same conclusion. *See Allstate Ins. Co. v. Foster*, 693 F.Supp. 886, 888 (D.Nev.1988).