JOSHUA L. BECKWITH AND WILLIAM MARTIN RECCELLE, APPELLANTS, *v.* STATE FARM FIRE AND CASUALTY COMPANY, RESPONDENT.

No. 39084

January 30, 2004                                                 83 P.3d 275

---

[10]*See* NRS 233B.135(3).

[11]*Id.*

*Law Offices of Joe E. Colvin* and *Joe E. Colvin,* Reno, for Appellant Reccelle.

*Laxalt & Nomura, Ltd.,* and *Robert A. Dotson* and *Devon T. Reese,* Reno, for Appellant Beckwith.

*Burton Bartlett & Glogovac* and *Scott A. Glogovac* and *Gregory J. Livingston,* Reno, for Respondent.

# OPINION

By the Court, MAUPIN, J.:

In this appeal, we consider whether the intentional misconduct of an intoxicated insured is covered under a homeowner's personal third-party liability policy. We conclude that, regardless of the insured's intoxicated state, the act of striking another is intentional, that such an act is not a covered occurrence under the policy in question here, and that such incidents are subject to a properly drafted "intentional acts" exclusion clause. Consequently, we hold that the liability insurer in this instance is under no duty to defend or indemnify its insured in connection with an action seeking damages stemming from the insured's intentional infliction of bodily injury, even when the insured was intoxicated or believed he acted in self-defense.

## FACTS

On July 7, 2000, appellant Joshua L. Beckwith ingested alcohol, LSD, and marijuana during a party at a friend's residence. While walking home, he experienced hallucinations, disrobed, and entered a trailer park near the Truckee River in downtown Reno. Shortly thereafter, appellant William Martin Reccelle confronted Beckwith because children were playing in the area. In response, Beckwith began screaming and writhing on the ground, asking Reccelle if he was God. Apparently, Beckwith also believed that he was a dog and Reccelle was his "evil master." Although Reccelle attempted to reassure Beckwith, Beckwith struck Reccelle in the face, rupturing Reccelle's eye.

Beckwith pleaded nolo contendere to criminal charges stemming from the assault. Subsequently, Reccelle filed a civil complaint against Beckwith, alleging assault and battery, and negligence. Beckwith requested that respondent State Farm Fire and Casualty Company defend and indemnify him with respect to the civil action, pursuant to his homeowner's insurance policy. State Farm initially agreed, but then filed a declaratory judgment action seeking a judicial declaration of non-coverage in connection with the incident.

State Farm ultimately moved for summary judgment on the coverage issues, arguing that the incident was not a covered "occurrence" as defined in the policy, and that the policy's intentional-acts exclusionary clause precluded coverage. Beckwith and Reccelle filed separate cross-motions for summary judgment, argu-

ing that due to his intoxication, Beckwith could not have acted intentionally when he struck Reccelle. Beckwith also argued that, at the time he struck Reccelle, he believed he was acting in self-defense and, thus, his actions were not intentional.

The district court granted State Farm's motion for summary judgment, concluding that the insurance policy did not cover Beckwith's intentional act of striking Reccelle. Beckwith and Reccelle appeal jointly.

## DISCUSSION

We review orders granting summary judgment de novo.[2] Summary judgment is appropriate when, after a review of the record viewed in a light most favorable to the non-moving party, there remain no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[3]

The insurance agreement in this case obligates State Farm to defend and indemnify Beckwith in connection with actions brought against him for damages caused by an "occurrence." The policy defines the term "occurrence" as an accident resulting in bodily injury. Although the policy does not define the term "accident," a common definition of the term is "a happening that is not expected, foreseen, or intended."[4] In addition, the policy contains exclusionary language precluding coverage for bodily injury or property damage "(1) which is either expected or intended by the insured; or (2) which is the result of willful and malicious acts of the insured."

This court dealt with a similarly worded insurance policy in *Mallin v. Farmers Insurance Exchange.*[5] In *Mallin,* this court observed that " 'intent' or 'intention' denotes a design or desire to cause the consequences of one's acts and a belief that given consequences are substantially certain to result from the acts."[6] Applying this definition of intent, we concluded that a homeowner's liability insurance policy did not cover the insured's actions of fatally shooting his wife and two of her friends, despite a claim that the insured did not intend his actions because he acted in a psychotic fit of rage.[7] We also noted that the insured's "sup-

---

[2]*Tore, Ltd. v. Church,* 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989).

[3]*Butler v. Bogdanovich,* 101 Nev. 449, 451, 705 P.2d 662, 663 (1985).

[4]*Webster's New World Dictionary* 8 (3d ed. 1988).

[5]108 Nev. 788, 790, 839 P.2d 105, 106 (1992) (reviewing an insurance policy providing coverage for damages from an accident and exempting damages resulting from intentional acts of the insured).

[6]*Id.* at 791, 839 P.2d at 107.

[7]*Id.* at 789, 839 P.2d at 106.

posed inability to *control* his acts [was] not the same as an inability to *intend* his acts."[8]

We take this opportunity to extend our holding in *Mallin* and reject appellants' argument that Beckwith was unable to act intentionally as a result of his voluntary intoxication.[9] Whether Beckwith thought Reccelle was God or his evil master is of no matter because he admittedly struck Reccelle in the eye with the desire of getting away from him. This is a non-accidental intentional act even if Beckwith did not intend to harm Reccelle. Thus, we conclude that Beckwith's act of striking Reccelle is not an occurrence under the insurance policy[10] and is excluded from coverage under the policy language concerning intentional misconduct.[11] In this, we recognize Beckwith's claims that the intentional-acts exclusion does not apply because, given his advanced state of intoxication, he did not intend to injure Reccelle and that, because he believed he acted in self-defense, his conduct was not malicious. We reject this line of argument because the exclusion properly dovetails with the reasonable construction of the policy that an occurrence requires an accidental event.[12] Accordingly, State Farm is not obligated to defend or indemnify Beckwith with respect to any judgment obtained against him by Reccelle.

[8]*Id.* at 792, 839 P.2d at 107.

[9]*See, e.g., Wessinger v. Fire Ins. Exchange,* 949 S.W.2d 834, 840 (Tex. App. 1997) (concluding that "voluntary intoxication cannot be used to defeat the intent requirement in an insurance policy").

[10]*See Hooper v. State Farm Mut. Auto. Ins. Co.,* 782 So. 2d 1029, 1033 (La. Ct. App. 2001) (observing that summary judgment was properly granted in favor of the insurance company because an insured acts intentionally when he strikes another in the face with a closed fist, despite a claim that the act was not intentional); *Royal Indem. Co. v. Love,* 630 N.Y.S.2d 652, 654 (Sup. Ct. 1995) (concluding that intentional assault is an intentional act, and thus, cannot constitute an accident); *Wessinger,* 949 S.W.2d at 841 (concluding that the act of striking another is not an occurrence because such an act is voluntary and intentional, not accidental).

[11]*See Ohio Cas. Ins. Co. v. Henderson,* 939 P.2d 1337, 1343 (Ariz. 1997) (concluding that an intentional-acts exclusionary clause applies when the nature and circumstances of the insured's acts are such that harm is substantially certain to result); *Hanover Ins. Co. v. Newcomer,* 585 S.W.2d 285, 289 (Mo. Ct. App. 1979) (concluding that the act of swinging a machete is an intentional act from which an injury could be expected, hence, evidence that the insured was under the influence is of no consequence in determining whether coverage is precluded by the intentional-acts exclusionary clause); *Ludwig v. Dulian,* 579 N.W.2d 795, 799 (Wis. Ct. App. 1998) (concluding that an intentional-acts exclusionary clause precludes insurance coverage where a purposeful act is substantially certain to produce injury, despite an insured's claim that he did not intend any harm).

[12]*See supra* note 10.

## CONCLUSION

Applying this court's holding in *Mallin,* we conclude that Beckwith's act of striking Reccelle was intentional; and thus, the act was not an occurrence under the insurance policy. Likewise, notwithstanding Beckwith's claim that he was too intoxicated to intend the acts and resulting injuries to Reccelle, the intentional-act exclusionary clause applies to negate coverage.

We therefore affirm the district court's order granting summary judgment in favor of State Farm.

BECKER and GIBBONS, JJ., concur.

AGOSTI, J., concurring:

I concur with the majority because under the circumstances presented here, the insured's intoxication was voluntary. I do not believe that one who voluntarily intoxicates or drugs oneself and then relinquishes all responsibility for one's acts, claiming them to be negligent or accidental, ought to obtain the protection from personal liability that a policy of insurance affords. I believe, however, that if one's intoxication or drugged state is imposed upon him or her, the coverage result would be far different. In that case, I would agree with the dissent that public policy considerations ought to favor coverage.

ROSE, J., with whom SHEARING, C. J., agrees, dissenting:

I disagree with the majority's conclusion that an insured's intoxication should not be considered in determining whether he acted intentionally. Additionally, I do not believe that this court's holding in *Mallin v. Farmers Insurance Exchange*[1] requires us now to dismiss the possibility that intoxication may vitiate intent. Indeed, in *Mallin,* this court observed that "there is certainly a possibility that some kinds of circumstances could, in certain cases lead to the conclusion that a person was suffering from such a mental disorder as to be incapable of forming the intent to kill."[2] I believe that intoxication may present such a circumstance.

Several courts have held that intoxication may negate an insured's intent.[3] These courts have based their decisions on public policy considerations, namely:

---

[1] 108 Nev. 788, 839 P.2d 105 (1992).

[2] *Id.* at 793-94, 839 P.2d at 108.

[3] *See, e.g., Republic Ins. Co. v. Feidler,* 875 P.2d 187, 192 (Ariz. Ct. App. 1993) (observing that a voluntarily intoxicated insured may lack the mental capacity to form the intent required to invoke a policy exclusion for intentional acts of the insured); *State Farm Fire & Cas. Co. v. Morgan,* 364 S.E.2d 62, 64 (Ga. Ct. App. 1987) (same); *Allstate Ins. Co. v. Carioto,* 551 N.E.2d 382, 389 (Ill. Ct. App. 1990) (same); *Hanover Ins. Co. v. Talhouni,* 604 N.E.2d

With respect to voluntary intoxication, the public policy considerations applicable to a criminal prosecution are not decisive as to liability insurance coverage. In criminal matters there is reason to deal cautiously with a plea of intoxication, and this [sic] to protect the innocent from attack by drunken men. . . .

But other values are involved in the insurance controversy. The exclusion of intentional injury from coverage stems from a fear that an individual might be encouraged to inflict injury intentionally if he was assured against the dollar consequences. Pulling the other way is the public interest that the victim be compensated, and the victim's rights being derivative from the insured's, the victim is aided by the narrowest view of the policy exclusion consistent with the purpose of not encouraging an intentional attack. And the insured, in his own right, is also entitled to the maximum protection consistent with the public purpose the exclusion is intended to serve.[4]

I agree with the policy behind allowing an insured to argue that intoxication vitiated his intent. Based on the facts presented in this case, the question of whether Beckwith's intoxication vitiated his intent should be a factor for the trier of fact to consider when determining whether State Farm has a duty to defend and indemnify Beckwith.[5] Accordingly, I would reverse the district court's order granting summary judgment in State Farm's favor.

---

689, 692 (Mass. 1992) (same); *Safeco Ins. Co. v. McGrath,* 817 P.2d 861, 864 (Wash. Ct. App. 1991) (same); *Morris v. Farmers Ins. Exchange,* 771 P.2d 1206, 1215 (Wyo. 1989) (same).

[4]*Burd v. Sussex Mutual Insurance Company,* 267 A.2d 7, 15 (N.J. 1970) (citations omitted).

[5]*See McGrath,* 817 P.2d at 864 (concluding that whether an insured may be so intoxicated as to be unable to form an intent to commit an act is a question for the trier of fact).