**ALLSTATE INSURANCE COMPANY,**
Plaintiff,

v.

**Daniel B. SANDERS, Martina J. Sanders, Michael Frauenknecht, and David Edington, Defendants.**

No. 3:06–CV–00376–LRH–VPC.

United States District Court,
D. Nevada.

July 5, 2007.

John T. Keating, Prince & Keating, Las Vegas, NV, for Plaintiff.

Daniel B. Sanders, Reno, NV, pro se.

Martina J. Sanders, Reno, NV, pro se.

Michael Frauenknecht, Reno, NV, pro se.

Robert F. Enzenberger, Law Offices of Robert F. Enzenberger, Reno, NV, for David Edington.

1. Refers to court's docket number.

*ORDER*

HICKS, District Judge.

Presently before the court are cross-motions for summary judgment (## 15, 16 [1]). Both the Plaintiff, Allstate Insurance Company ("Allstate"), and the Defendant, David Edington ("Edington"), have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Edington filed an opposition and cross-motion (# 16) to which Allstate replied (# 17). Edington subsequently replied in support of his cross-motion (# 19).

## I. Factual Background

This matter centers around an insurance coverage dispute arising from an incident that occurred on October 10, 2003, when Michael Frauenknecht ("Frauenknecht") threw a metal sign that hit Edington in the eye, allegedly causing Edington serious injury. Edington and Frauenknecht had been drinking alcoholic beverages and engaging in doltish horseplay when Frauenknecht threw the approximately five-by-nine-inch sheet metal sign at Edington from a distance of between ten and twenty feet. Frauenknecht maintains that he did not intend to hit or injure Edington with the sign. Rather, Frauenknecht maintains that he merely intended to "kind of scare [Edington] or alarm him." (Mot. for Summ. J. (# 15), Dep. of Michael Frauenknecht, Ex. 3 at 38:15–16.)

As a result of the incident, Edington filed a complaint against Frauenknecht in the Second Judicial District of the State of Nevada on October 6, 2005. Edington alleges personal injuries arising from Frauenknecht's negligence. At the time of the incident, Frauenknecht's parents, Daniel and Martina Sanders, had a Deluxe Homeowner's Insurance policy through Allstate. Allstate retained counsel for

Frauenknecht under a reservation of rights and continues to provide their legal defense.

Allstate filed a Complaint for Declaratory Relief with this court on July 5, 2006, requesting the court issue an order acknowledging that (1) Frauenknecht's conduct did not constitute an "occurrence" as the term is defined in the Sanders' insurance policy, and (2) the intentional act exclusion found in the Sanders' insurance policy applies to defeat coverage for any damages arising from Frauenknecht's conduct. Plaintiff moved for summary judgment (# 15), and by cross-motion, Edington requests the court declare that Allstate has a duty to defend and indemnify Frauenknecht in the state court negligence action brought by Edington.

## II. Legal Standards

### A. Operative Law

A federal district court, sitting in diversity, must apply the substantive law of the forum state in which it resides. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Fortis Benefits Ins. Co. v. Johnson,* 966 F.Supp. 987, 989 (D.Nev.1997). Accordingly, this court must construe the policy as a Nevada state court would if presented with the same question. *Fortis,* 966 F.Supp. at 990–91. In the absence of Nevada Supreme Court precedent, "federal courts exercising diversity jurisdiction may look to 'other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority' to determine how the state court would resolve the issue." *Santana v. Zilog, Inc.,* 95 F.3d 780, 783 (9th Cir.1996) (quoting *Burns v. Int'l Ins. Co.,* 929 F.2d 1422, 1424 (9th Cir.1991)).

An insurance company's duty to defend and/or indemnify its insured arises from the provisions of the insurance policy. *Rockwood Ins. Co. v. Federated Capital Corp.,* 694 F.Supp. 772, 776 (D.Nev.1988).

"The insurer must defend any lawsuit brought against its insured which potentially seeks damages within the coverage of the policy." *Id.* "An insurance policy is to be judged from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Siggelkow v. Phoenix Ins. Co.,* 109 Nev. 42, 846 P.2d 303, 304 (1993) (citing *Nat'l Union Fire Ins. Co. v. Reno's Executive Air,* 100 Nev. 360, 682 P.2d 1380, 1382 (1984)). Any attempt to restrict insurance coverage must be done explicitly. *Sullivan v. Dairyland Ins. Co.,* 98 Nev. 364, 649 P.2d 1357, 1358 (1982). "In particular, an insurer wishing to restrict the coverage of a policy should employ language which clearly and distinctly communicates to the insured the nature of the limitation." *Reno's Executive Air,* 682 P.2d at 1382.

### B. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56.

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Capitol Indem. Corp. v. Blazer,* 51 F.Supp.2d 1080 (D.Nev. 1999) (citing *S.E.C. v. Seaboard Corp.,* 677 F.2d 1297, 1300–01 (9th Cir.1982)). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact is more than some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986). Thus, only disputes over outcome determinative facts under the applicable substantive law will preclude the entry of summary judgment. *Id.*

Moreover, all facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether there is a genuine issue of material fact for summary judgment purposes. *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1050 (9th Cir.1995). After drawing inferences favorable to the respondent, "summary judgment will be granted only if all reasonable inferences defeat the plaintiff's claims." *Seaboard,* 677 F.2d at 1299.

## III. Discussion

### A. Accident or Occurrence

■ The Sanders' insurance policy only provides coverage for bodily injury caused by an "occurrence," which the policy also defines as an "accident." (Pl. Mot. for Summ. J. (# 15) at 5–6; Opp'n to Pl.'s Mot. for Summ. J. (# 16) at 9.[2]) In seeking summary judgment, Plaintiff argues that the incident in question was not an accident or occurrence within the meaning of the Sanders' insurance policy because Edington's alleged injuries were the result of Frauenknecht intentionally throwing the sign at Edington. Hence, Allstate claims to have no duty to defend or indemnify Frauenknecht. By cross-motion for summary judgment, Edington argues that the incident in question was an accident or occurrence within the meaning of the Sanders' insurance policy because Frauenknecht did not intend to hit or injure Edington by throwing the sign.

There are no genuine issues of material fact with regard to Frauenknecht's actions and intentions. The record demonstrates that Frauenknecht intentionally threw the sign at or in the general direction of Edington. (Mot. for Summ. J. (# 15), Dep. of Michael Frauenknecht, Ex. 3 at 38:13–22.) The record also shows that Frauenknecht did not intend to hit or injure Edington. Rather, Frauenknecht's intent was "just to kind of scare him or alarm him." *Id.* Thus, the principle question before this court is whether the intentional throwing of the metal sign at or in Edington's direction, without the intent to hit or injure, constitutes an "accident" under the policy.

The policy does not define "accident." (Pl. Mot. for Summ. J. (# 15) at 6; Opp'n to Pl.'s Mot. for Summ. J. (# 16) at 9.) In *Catania v. State Farm Life Ins. Co., Inc.,* 95 Nev. 532, 598 P.2d 631, 632–33 (1979), the Nevada Supreme Court elaborated upon the meaning of the term "accidental" in the context of an accidental death insurance policy, where the insured died from the effects of a self-inflicted heroin injection. *Id.* In construing the term "according to common speech and usage and the understanding of the average man," the court stated that "[o]ne paying the premium for a policy which insures against 'death by accidental means' intends to … insure against the fortuitous, the unintentional, and the unexpected, that which happens through mishap, mischance or misjudgment." *Id.* at 632–633 (quoting *Knight v. Metro. Life Ins. Co.,* 103 Ariz. 100, 437 P.2d 416, 420 (1968)). The court determined that "where an insured dies as the result of an intentional or expected act

---

**2.** The parties have not provided the court with a copy of the Sanders' insurance policy. However, both parties have quoted the same "Occurrence" limitation language within the policy. Hence, the court will accept that the parties have stipulated to the following contract language:

Occurrence—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.

(Pl. Mot. for Summ. J. (# 15) at 6; Opp'n to Pl.'s Mot. for Summ. J. (# 16) at 9.)

or event, but did not intend or expect death to result, the death is 'accidental' within the contemplation of that term, as utilized in a policy such as the one before us." *Catania*, 598 P.2d at 633.

The *Catania* court interpreted the term "accidental" from the perspective of the insured, and focused on whether the result of the insured's action was accidental, rather than the action itself. *Id.* at 632–33. Since the insured did not intend to die, his death was accidental, even though his death was caused by an intentional act. *Id.* at 633; *see also Blazer*, 51 F.Supp.2d at 1084–85 (finding an assault and battery allegedly committed by bar patrons could constitute an "accident" from the perspective of the owner and thus could be an "occurrence").

Here, there is no reason to believe that the term "accident" would take on a different meaning. "A distinction between 'accidental means' and 'accidental results' is certainly not understood by the average person, for whom accident policies are written." *Catania*, 598 P.2d at 633. Allstate's reliance on non-Nevada authorities such as *State Bancorp, Inc. v. United States Fidelity & Guarantee Ins. Co.*, 199 W.Va. 99, 483 S.E.2d 228 (1997) is misplaced, insofar as these cases improperly focus on whether the tortfeasor intended to commit the injury-causing act. In *Catania*, the Nevada Supreme Court focused solely on the insured's intentions and/or expectations with respect to the resulting harm. *Catania*, 598 P.2d at 633. Accordingly, this court must examine whether Frauenknecht expected or intended to cause Edington's alleged injuries.

The record demonstrates that Frauenknecht did not expect or intend the bodily injuries that allegedly resulted from his

intentional act. Unlike the cases of *Mallin v. Farmers Ins. Exch.*, 108 Nev. 788, 839 P.2d 105 (1992) (involving the intentional shooting of three people) and *Beckwith v. State Farm Fire & Casualty Co.*, 120 Nev. 23, 83 P.3d 275 (2004) (involving the intentional striking of someone in the face), the present case does not involve so seamless a connection between the intentional means and the unintended results as to make them reasonably indistinguishable, and it would be unreasonable to conflate the two.

The evidence before the court indicates that Edington's injuries were the result of an accident within the meaning of the insurance policy. Therefore, Edington's injuries constitute an occurrence under the Sanders' insurance policy with Allstate.

## B. Exclusion Provision

Even if Edington's injuries were accidental, and "therefore an 'occurrence' under the policy, they may be uninsurable under an exclusionary provision." *Blazer*, 51 F.Supp.2d at 1086 (citing *Hermitage Ins. Co. v. Dahms*, 842 F.Supp. 319, 324, 326 (N.D.Ill.1994)). The Sanders' insurance policy contains an Intentional Act Exclusion, which states in pertinent part, "[w]e do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." (Mot. for Summ. J. (# 15) at 10; Opp'n to Pl.'s Mot. for Summ. J. (# 16) at 13.[3]) Accordingly, Plaintiff argues that it has no duty to defend or indemnify Frauenknecht for Edington's alleged injuries because Frauenknecht intentionally threw the sign at Edington. Conversely, Edington argues that

---

**3.** The parties have not provided the court with a copy of the Sanders' insurance policy. However, both parties have quoted the same Intentional Act Exclusion language within the policy. Hence, the court will accept that the parties have stipulated to the contract language quoted herein.

the exclusion does not apply because Frauenknecht did not intend to hit or injure Edington by throwing the sign.

The court must decide if the exclusionary provision clearly and unambiguously bars coverage for Edington's injuries. Further, in order to prevail on summary judgment, Allstate must have clearly and distinctly communicated to the Sanders the nature of any restrictions or limitations of coverage. *Reno's Executive Air,* 682 P.2d at 1382. Moreover, the court will construe any ambiguities in Defendants' favor. *Harvey's Wagon Wheel, Inc. v. MacSween,* 96 Nev. 215, 606 P.2d 1095, 1098 (1980).

Intent "denotes a design or desire to cause the consequences of one's acts and a belief that given consequences are substantially certain to result from the acts." *Mallin,* 839 P.2d at 105 (citing Restatement (Second) of Torts § 8A (1965)). Hence, an exclusion for intentionally caused injuries, or injuries expected or intended by the insured, applies when the insured intended to cause not only the event that resulted in the harm, but also the resulting injury or harm itself. 2 Allan D. Windt, Insurance Claims and Disputes § 11:9 (4th ed.2007). As a general rule, therefore, one must look to the subjective intent of the insured, and if the insured did not intend to cause at least some injury, the exclusion is inapplicable. *Id.*

A few Nevada cases have determined that such an intent can be presumed or inferred from the nature of certain intentional acts. *See e.g., Rivera v. Nevada Med. Liab. Ins. Co.,* 107 Nev. 450, 814 P.2d 71 (1991) (holding that an intentional act exclusion precluded claim of patient alleging sexual assault by physician regardless of physician's subjective intent because forcible rape was an act which physician knew with substantial certainty would cause harm to victim); *Beckwith,* 120 Nev.

23, 83 P.3d 275 (2004) (finding that intentional striking of someone in the face is an intentional act subject to a properly drafted "intentional acts" exclusion clause). However, no such inference can be made in the present case.

Frauenknecht threw a sign at or in the general direction of Edington in the context of some plainly careless and senseless horseplay. Nevertheless, Frauenknecht testified that he did not subjectively intend to hit or injure Edington, and the evidence does not indicate that Edington's injuries would have been "reasonably expected to result from" Frauenknecht's actions. Rather, the record demonstrates that Edington's injuries were unlikely, due to the size of the sign, the distance between Edington and Frauenknecht, and the unfortunate and improbable alleged injury to the small but highly vulnerable eye area.

The exclusion in the policy for intentional acts does not bar coverage for Edington's injuries. Accordingly, the Plaintiff has a duty to defend and indemnify Michael Frauenknecht in the state court negligence action brought by David Edington.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (# 16) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment (# 15) is hereby DENIED.

The clerk shall enter judgment accordingly.

IT IS SO ORDERED.